William R. Mott, District Judge,
assigned, concurring: I join in the majority opinion as to all issues decided in this matter. With regard to the propriety of the instruction on juror misconduct, I agree with the majority’s analysis and application of State v. Tahah, 302 Kan. 783, 794-95, 358 P.3d 819 (2015), to the facts of this case.
I write separately only to express my view that the admonishment given to the jury prior to their being excused for the evening was accurate and proper, regardless of timing. When a juror gains or seeks outside information about the trial he or she does jeopardize die proceedings. A mistrial could result. If that happened the whole process of trial would start over—both parties would be placed back to the procedural position they occupied before the *272 jury was summonsed. In the ordinary course, a mistrial based upon juror misconduct is costly all around. The timing of the instruction does not change the truth of the matter. Moreover, the timing of the instruction does not alter the instruction’s clear and proper coercive purpose. Any juror gets it—do not seek outside information about the case, etc.
The Kansas Supreme Courts jurisprudence regarding Allen instructions, and its focus on the factual inaccuracy of Allen instructions, has provided a platform from which to unnecessarily complicate the instruction given in this case and its decision in Tahah. Our jurisprudence has consistently found fault with Allen instructions for two basic reasons: 1) The risk of exerting undue pressure on jurors for a verdict, and 2) factual inaccuracy. See State v. Salts, 288 Kan. 263, 266, 200 P.3d 464 (2009). The first reason, on its own, should justify the prohibition of Allen instructions.
The factual inaccuracy rationale clouds the issue. I concede that from the posttrial vantage in time, it is factually unlikely that the losing party would view a mistrial as an inconvenience. I would further concede that a trial court, operating in the present when giving an Allen instruction, can predict in any given case that the party that will eventually receive a favorable verdict would naturally view a mistrial as an inconvenience while the party that will eventually receive an unfavorable verdict would regard a mistrial with glee. So what? It is the Allen instruction’s illegitimate effect on the process that is the issue, not the failure of the instruction to square factually with the predictable views of the parties after a verdict is reached. Consider the following attempt at creating a more accurate Allen instruction: Another trial would be a tremendous inconvenience on the party destined to prevail Arguably, this instruction is more accurate than the Allen instructions the court has considered in the past, yet it is arguably even more coercive to holdout jurors. The crux of the matter is always the purpose of the instruction and the likely effect on the jurors.
The Tahah court did not take this tact. In distinguishing an instruction like the one given in this case, the Tahah court stated that tire instruction’s “coercive effect (to prevent juror misconduct) *273 is entirely proper and justified” and that “because its purpose is proper, the instruction is factually accurate.” Tahah, 302 Kan. at 795. If a proper purpose can make facts accurate, an improper purpose can make facts inaccurate, right? Indeed, the Tahah court agrees, holding that the improper purpose of coercing a unanimous verdict causes the Allen instruction to be an instruction that “has rightly been described as factually inaccurate.” 302 Kan. at 795. This sleight of hand is unnecessary because the court should hold that it is the Allen instructions illegitimate effect on die process that is the issue, not die failure of the instruction to square factually with the predictable views of the parties after a verdict is reached.
Shedding the yoke of confusing and superfluous rationale from the court’s Allen instruction jurisprudence, the analysis of the instruction in this case is simple. The instruction given in this case simply suggests jurors think of the consequences of engaging in juror misconduct prior to engaging in it. This instruction meets jurors where they will be shortly, alone with that iPhone and no one will probably ever know. The court and the parties should be concerned. What could be more devastating to a defendant than a jurors Internet search uncovering a defendants lengthy criminal history? These are the rational fears of real fife trial attorneys everywhere and can be a good reason not to object to the courts instruction.
In short, the expense of a trial is a proper consideration for any juror when deciding whether to follow the courts admonitions not to look for outside information. This is a far cry from instructions that encourage jurors to consider the expense of another trial as a factor in whether they vote guilty or not guilty, which is clearly improper as detailed in the majority opinion. In my estimation, no juror could reasonably conflate and distort tire instructions given in this case to mean they should vote guilty to avoid a mistrial.