Johnson, J.,
dissenting in part: I agree with the majority’s identification of three trial errors, i.e., “the Doyle violation, the prosecutors reference to Fishers testimony as ‘bull,’ and the failure to instruct on the lesser included offense instruction of attempted voluntary manslaughter.” Slip op. at 28. But I take exception to part of the majority’s analysis on the question of whether the voluntary manslaughter lesser included offense instruction was factually appropriate, and I find an additional error in giving the pretrial instruction directing the jury to consider matters unrelated to defendant’s guilt. Further, I would find that the State did not present substantial competent evidence to support the conviction for criminal damage to property, as the State charged that crime in Fisher’s case.
Beginning with the factual propriety of the voluntary manslaughter instruction, I would not apply the product-of-psychosis exception from State v. Ordway, 261 Kan. 776, 934 P.2d 94 (1997), instead of our more recent — -and arguably more logically consistent — test enunciated in State v. Roeder, 300 Kan. 901, 336 P.3d 831 (2014), cert. denied 135 S. Ct. 2316 (2015). As we pointed out in Roeder, the Ordway court first found that the elements of the imperfect self-defense manslaughter statute involved in that case were purely subjective, but then it introduced an objective exception when it declared that “ ‘the “unreasonable but honest belief’ necessary to support the “imperfect right to self-defense manslaughter” cannot be based upon a psychotic delusion.’ 261 Kan. at 790.” Roeder, 300 Kan. at 923. We queried “whether Ordway intended for tire constraint on subjectivity to apply to others whose belief may have been the product of aberrant mental processes, e.g., brainwashed cult members or religiously indoctrinated terrorists.” 300 Kan. at 923.
Nevertheless, we rejected Ordway’s purported purely subjec *268 tive interpretation of the imperfect self-defense statutory provisions, opining that
“the purely subjective interpretation does not comport with the statutory language of K.S.A. 21-3403(b). If the legislature had intended to allow a defendant to make up his or her own version of the law based upon the defendant’s declaration of an honest belief, tire statute could have simply defined the crime as an intentional killing of a human being committed upon an unreasonable but honest belief that circumstances existed that justified deadly force. But the statute adds something; it requires that the honest belief has to be ‘that circumstances existed that justified deadly force under K S.A. 21-3211, 21-3212 or 21-3213 and amendments thereto.’ (Emphasis added.) K.S.A. 21-3403(b).
“The statutory reference to the perfect defense statutes has to mean something because we do not interpret statutes in such a manner as to render portions superfluous or meaningless. See State v. Van Hoet, 277 Kan. 815, 826-27, 89 P.3d 606 (2004) (‘The court should avoid interpreting a statute in such a way that part of it becomes suiplusage.’). The logical interpretation is that the circumstances which tire defendant honestly believed to exist must have been such as would have supported a claim of perfect self-defense or defense-of-others, if true. Accord People v. Enraca, 53 Cal. 4th 735, 761, 137 Cal. Rptr. 3d 117, 269 P.3d 543 ("To make the observation in In re Christian S. [, 7 Cal. 4th 768, 773 n.1, 30 Cal. Rptr. 2d 33, 872 P.2d 574 (1994),] more general, not every unreasonable belief will support a claim of imperfect self-defense but only one tliat, if reasonable, would support a claim of perfect self-defense.’”), cert. denied 133 S. Ct. 225 (2012).” 300 Kan. at 923-24.
Applying that Roeder test here, a lesser included instruction based upon imperfect self-defense was factually appropriate. If Fishers belief — that Angel possessed military hand-to-hand combat skills with which she could ldll him when she initiated a physical attack upon him — had been true, that subjective belief would have reasonably supported a claim of perfect self-defense. But I agree with the majority that Fisher has not carried his burden to show reversal is required under the clearly erroneous standard.
With respect to the preliminary instruction telling the jury that “ ‘a mistrial is a tremendous expense and inconvenience to the parties, the Court, and the taxpayers,’ ” I still firmly believe that “the attempted coercive instruction directs the jurors to consider matters that are beyond the scope of their role in the criminal justice system and the instruction statement is not true in all respects.” State v. Tahah, 302 Kan. 783, 797, 358 P.3d 819 (2015) (Johnson, J., concurring). Moreover, even the PIK committee has contradicted the notion that the jury should be concerned with the money that *269 might be spent in disposing with the case after the trial, to-wit: “Your only concern in this case is determining if the defendant is guilty or not guilty. The disposition of the case is a matter for determination by the Court.” PIK Crim. 4th 50.080.
Which is it, then? Does the jury concern itself only with the guilt of the defendant and leave the posttrial disposition of the case for the court to deal with? Or, does the jury concern itself with the tremendous expense and inconvenience to the parties, the Court, and the taxpayers if diere is a mistrial? If the latter, does the jury also worry about the tremendous expense and inconvenience caused by a hung jury mistrial that would follow a failure to reach a unanimous verdict? If not, how would a jury intuit that it is only a bad thing to use the taxpayers’ money in the event of a misconduct mistrial but acceptable for “ ‘the entire trial process to start over’ ” when they cannot agree on a verdict? Tahah, 302 Kan. at 798. The point is that the pretrial instruction injects a risk of misdirecting the jury, and that risk is unnecessary to accomplish the purpose of dissuading juror misconduct. I would declare it to be error.
Finally, the principal reason I am writing separately is to challenge the majority’s declaration that “[a] resident of a house has, as a matter of law, ‘an interest’... in an interior door of that house sufficient to support another’s prosecution for criminal damage to that door.” 304 Kan. 242, Syl. ¶ 5. The majority’s interpretation of the criminal damage statute to support that proposition suffers from the construction flaw of isolating a word or phrase, rather than construing the whole provision. See State v. Gonzales, 255 Kan. 243, 249, 874 P.2d 612 (1994) (quoting Brown v. Keill, 224 Kan. 195, Syl. ¶ 4, 580 P.2d 867 [1978]) (“‘In order to ascertain the legislative intent, courts are not permitted to consider only a certain isolated part or parts of an act but are required to consider and construe together all parts thereof in pari materia.’”); cf. Samantar v. Yousuf, 560 U.S. 305, 319, 130 S. Ct. 2278, 176 L. Ed. 2d 1047 (2010) (“In sum, ‘[w]e do not . . . construe statutory phrases in isolation; we read statutes as a whole.’ United States v. Morton, 467 U.S. 822, 828, 104 S. Ct. 2769, 81 L. Ed. 2d 680 [1984].”).
The majority bases its holding on its interpretation of the isolated phrase: “property in which another has an interest.” But the *270 whole statutory provision upon which Fishers prosecution was based, K.S.A. 2015 Supp. 21-5813(a)(l), says more, to-wit:
“(a) Criminal damage to property is by means other than by fire or explosive:
(1) Knowingly damaging, destroying, defacing or substantially impairing the use of any property in which another has an interest without the consent of such other person.” (Emphasis added.)
Consequently, under the plain language of the statute, the State’s evidence that the defendant knowingly damaged property in which another has an interest is insufficient to establish the statutory crime of criminal damage to property, under K.S.A. 2015 Supp. 21-5813(a)(l). The State must also prove that “such other person” did not consent to the act.
For example, a homeowners roofing contractor, hired to replace shingles on the homeowners house, could not be convicted of criminal damage to property, even though the State could easily prove that the contractor knowingly damaged “any property in which another has an interest” when the contractor ripped off the homeowners old shingles. Of course, the contractors actions do not constitute the crime of criminal damage to property because the absence of consent is an essential element of the crime, and the homeowners consent to the damaging act as part of the replacement contract negates that element.
As I understand the majority’s statutory construction, a non-owner resident/guest in a house has a legally sufficient interest in and to any part of that house, so as to qualify as the victim of a criminal damage to property prosecution under K.S.A. 2015 Supp. 21-5813(a)(l). But reading the statute as a whole, as we must, reveals that the majority’s construction of the statute also fails to comply with the “fundamental. . . rule of statutory interpretation that courts are to avoid absurd or unreasonable results.” State v. Frierson, 298 Kan. 1005, 1013, 319 P.3d 515 (2014).
As K.S.A. 2015 Supp. 21-5813(a)(l) is written- — “property in which another has an interest without the consent of such other person” — the same person whose property interest the State is alleging has been damaged must be the same person whose consent to the damaging act the State must refute. (Emphasis added.) Logically, then, to be a victim of criminal damage to property one must *271 have an interest in that property sufficient to be able to consent to someone “[kjnowingly damaging, destroying, defacing or substantially impairing the use of [that] property.” K.S.A. 2015 Supp. 5813(a)(1). Otherwise, the absence of consent portion of the statute is meaningless. See Frierson, 298 Kan. at 1013 (“court presumes the legislature does not intend to enact useless or meaningless legislation”).
The resulting absurdity of the majority’s statutory interpretation can be seen in my roofing contractor example above. Under the majority’s holding that a resident of a house has, as a matter of law, a sufficient interest in a part of the house to support another’s prosecution for criminal damage to property, the State could prosecute the roofing contractor by identifying a foreign exchange student living in the homeowner’s house as the victim of the crime. Notwithstanding the homeowner’s consenting for the contractor to damage the roof as a prelude to replacement, the roofer was “without the consent of such other person,” which would have been the foreign exchange student in this example.
To avoid that absurdity in this case, I would have required the State to show that Tim, as the sole owner of house, had invested Angel with a sufficient interest in the interior door so that she could have consented to Fisher damaging that door. Otherwise, she did not have a sufficient interest in the property to be the victim of criminal damage to property under the language of K.S.A. 2015 Supp. 21-5813(a)(l). Such a determination would be a question of fact, not a matter of law, as the majority asserts. Here, there was no evidence presented to establish that Angel’s interest in the door complied with the requirements of K.S.A. 2015 Supp. 21-5813(a)(l), and I would reverse that conviction.