MODIFIED

NOT DESIGNATED FOR PUBLICATION

No. 112,538

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

EDUARDO ESCOBAR,
*Appellant.*


MEMORANDUM OPINION

Appeal from Johnson District Court; THOMAS KELLY RYAN, judge. Original opinion filed April 1, 2016; modified opinion filed June 1, 2016. Affirmed in part, reversed in part, and remanded with directions.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Andrew Hamline*, legal intern, *Steven J. Obermeier*, senior deputy district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before HILL, P.J., McANANY and ARNOLD-BURGER, JJ.


*Per Curiam:* One of the ways to commit the felony crime of fleeing and eluding a police officer in Kansas is to become involved in a motor vehicle accident during a police pursuit. Appellant Eduardo Escobar was indeed involved in a one-car accident but that accident occurred after the two police officers who were following him had turned off their unmarked car's emergency lights and had decelerated, thus ending their pursuit. Because there is insufficient evidence that the motor vehicle accident here happened

1

during a police pursuit, as required by the very specifically worded statute, K.S.A. 2012 Supp. 8-1568(b)(1), we hold Escobar's felony fleeing and eluding conviction must be reversed. We do, however, remand with directions to sentence Escobar for misdemeanor fleeing and eluding.

*The facts are not disputed.*

On December 28, 2012, a server at a Johnson County restaurant saw a man peering into the windows of several vehicles in the restaurant parking lot. The man smashed the front driver's side window of one of the vehicles, reached in, opened the back door, and leaned inside. The man then got out of that car, entered the driver's side of a green truck, and drove the truck around to the front of the restaurant. The server called police and took a picture of the green truck. The man drove over to a Mongolian barbecue restaurant across the street and parked.

Uniformed Overland Park Police Officer Jason Goddard was dispatched to the area and given a description of the green truck and tag. Driving a marked patrol car, Goddard arrived at the Mongolian restaurant. With the patrol vehicle's lights and sirens activated, Officer Goddard positioned his vehicle in front of the green truck "nose to nose." The truck made an aggressive turn to the right to avoid the patrol car, drove onto 95th Street, and took off at a high rate of speed. Goddard did not pursue the truck because of the department's policy not to pursue for property crimes. Another officer advised the dispatcher of the direction the truck was going.

Corporal Rob Sanderson and Detective James Befort were in an undercover vehicle with no police markings, but with subdued lights, when they received the call from the dispatcher about the green pickup truck. They saw a green Chevy Avalanche that matched the vehicle description enter I-35 from 95th Street. Detective Befort

2

maneuvered through "pretty heavy" traffic and confirmed the vehicle tag near 67th Street. The Avalanche was only going "about 60 or so because the traffic was so heavy."

The detective then turned on his car's emergency red and blue lights and siren to signal the truck to pull over. The driver of the green truck moved to the right lane, where there was less traffic, and accelerated. Detective Befort then turned off the lights and siren because it was outside the department's policy to pursue a vehicle for auto burglary. They slowed their vehicle down to about 55, continued to follow the green truck because they were on I-35, and "couldn't really turn around at that point." They saw the green truck "whipping in and out of traffic, still accelerating." They did not lose sight of the truck, "other than when it would move between vehicles, but not a sustained period of time." Later, the truck swerved left, the driver lost control, the truck spun around, and the truck smashed into the center median just north of Shawnee Mission Parkway. Detective Befort again turned the lights and sirens on, stopped in front of the truck, and arrested the occupants. Escobar was identified as the driver.

Several items were seized from the green truck: a rifle magazine, a round of ammunition, a Ziploc baggie containing suspected methamphetamine, suspected burnt marijuana cigars, a glass pipe, a 9-millimeter handgun, an ammunition magazine, and a rifle.

The State charged Escobar with possession of methamphetamine, criminal possession of a firearm by a convicted felon, burglary of a vehicle, fleeing and eluding, criminal damage to property, possession of marijuana, and possession of drug paraphernalia.

A jury found Escobar guilty of criminal possession of a firearm by a convicted felon and fleeing and eluding a police officer. The jury was unable to reach a verdict on the remaining counts. The State later dismissed the burglary and criminal damage to

3

property charges. Subsequently, the parties reached a plea agreement whereby Escobar pled no contest to possession of methamphetamine and the State dismissed the possession of marijuana and possession of drug paraphernalia charges. The court sentenced Escobar to 34 months in prison.

In this appeal, Escobar contends that there was insufficient evidence of fleeing and eluding because he was not involved in the motor vehicle accident during a police pursuit; Corporal Sanderson and Detective Befort were not in uniform, prominently displaying their badges; and the corporal and detective were not in an appropriately marked official police vehicle.

*We review some relevant points of law.*

When the sufficiency of evidence is challenged in a criminal case, the appellate court reviews all the evidence in the light most favorable to the prosecution. The conviction will be upheld if the court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt based on the evidence. In determining whether there is sufficient evidence to support a conviction, the appellate court generally will not reweigh the evidence or the credibility of the witnesses. *State v. Williams*, 299 Kan. 509, 525, 324 P.3d 1078 (2014).

K.S.A. 2012 Supp. 8-1568 provides, in relevant part:

"(b) Any driver of a motor vehicle who willfully fails or refuses to bring such driver's vehicle to a stop, or who otherwise flees or attempts to elude a pursuing police vehicle or police bicycle, when given visual or audible signal to bring the vehicle to a stop, and who: (1) Commits any of the following *during a police pursuit*: . . . (D) is involved in any motor vehicle accident or intentionally causes damage to property; . . . (2) . . . shall be guilty as provided in subsection (c)(4).

. . . .

4

"(d) The signal given by the police officer may be by hand, voice, emergency light or siren:

(1) If the officer giving such signal is within or upon an official police vehicle or police bicycle at the time the signal is given, the vehicle or bicycle shall be appropriately marked showing it to be an official police vehicle or police bicycle; or

(2) if the officer giving such signal is not utilizing an official police vehicle or police bicycle at the time the signal is given, the officer shall be in uniform, prominently displaying such officer's badge of office at the time the signal is given.

"(e) For the purpose of this section:

. . . .

(2) 'Appropriately marked' official police vehicle or police bicycle shall include, but not be limited to, any police vehicle or bicycle equipped with functional emergency lights or siren or both and which the emergency lights or siren or both have been activated for the purpose of signaling a driver to stop a motor vehicle." (Emphasis added.)

*The officers were not in pursuit when the motor vehicle accident occurred.*

Police chases, especially high-speed pursuits in heavy traffic areas, are extremely dangerous. They are dangerous not only for those involved in the chase, but dangerous to the many innocent commuters that happen to be in harm's way. We commend the City of Overland Park for its well-reasoned policy of not pursuing when dealing with property crimes. And, after all, that is what was involved in this case—the property crimes of automobile burglary and theft. The drug charges came about only after Escobar was arrested.

The charging statute, K.S.A. 2012 Supp. 8-1568, does not define "police pursuit." Black's Law Dictionary 1432 (10th ed. 2014) defines "pursuit" as "[t]he act of chasing to overtake or apprehend." The facts show the chase to overtake was over when Corporal Sanderson and Detective Befort turned off the emergency lights and siren and decelerated. After that, Escobar's car hit the median.

The officers were straightforward in their testimony. Corporal Sanderson testified that he and Detective Befort received the call from dispatch at about 3:30 that afternoon. They then saw a green truck matching the vehicle description going westbound on 95th Street at Monrovia. They followed the green truck onto I-35 from 95th Street. At around 67th Street, they were able to catch up to the truck and confirm the tag number. Detective Befort turned on their vehicle's emergency lights and siren to signal the driver to pull over.

The driver of the green truck moved to the right lane, where there was less traffic, and accelerated. Corporal Sanderson testified that Detective Befort then turned the lights and siren off because "it was outside of our pursuit policy." But, they continued to follow the truck. Following is not chasing to overtake or apprehend. They slowed their vehicle down to about 55 and observed the green truck "whipping in and out of traffic, still accelerating." They observed the truck crash just north of Shawnee Mission Parkway. They did not lose sight of the truck other than when it moved between vehicles.

In light of these facts that the motor vehicle accident happened *after* the pursuit ended, we must hold that a rational factfinder could not find the accident occurred during a police pursuit. We must reverse.

Now, we must consider a lesser included charge—misdemeanor fleeing and eluding.

A lesser included offense is an offense where all the elements of the lesser offense are identical to some of the elements of the higher offense. K.S.A. 2012 Supp. 21-5109(b)(2); see *State v. Johnson*, 283 Kan. 649, 656, 156 P.3d 596 (2007).

6

Misdemeanor fleeing and eluding is a lesser included offense of felony fleeing and eluding. See *State v. Ely*, 2004 WL 1191458, *1 (Kan. App. 2004) (unpublished opinion). Felony fleeing and eluding occurs when any driver of a motor vehicle

"willfully fails or refuses to bring such driver's vehicle to a stop, or who otherwise flees or attempts to elude a pursuing police vehicle or police bicycle, when given visual or audible signal to bring the vehicle to a stop, and who: (1) Commits any of the following during a police pursuit: . . . (D) is involved in any motor vehicle accident or intentionally causes damage to property." K.S.A. 2012 Supp. 8-1568(b)(1)(D), (4).

Misdemeanor fleeing and eluding occurs when any driver of a motor vehicle

"willfully fails or refuses to bring such driver's vehicle to a stop for a pursuing police vehicle or police bicycle, when given visual or audible signal to bring the vehicle to a stop [or] who willfully otherwise flees or attempts to elude a pursuing police vehicle or police bicycle, when given visual or audible signal to bring the vehicle to a stop." K.S.A. 2012 Supp. 8-1568(a)(1)-(2), (c)(1).

Thus, we note that the elements are identical except that misdemeanor fleeing and eluding does not require that an accident occur during a police pursuit.

There was sufficient evidence to convict Escobar of misdemeanor fleeing and eluding. The police pursuit of Escobar ended before the accident when the police turned off their vehicle's lights and siren because of the department's nonpursuit policy, but the crime of misdemeanor fleeing and eluding was already completed by that time.

The officer giving the signal to stop must be in an appropriately marked vehicle or the officer must be in uniform. K.S.A. 2012 Supp. 8-1568(d), provides, in relevant part:

"The signal given by the police officer may be by hand, voice, emergency light or siren:

7

"(1) If the officer giving such signal is within or upon an official police vehicle or police bicycle at the time the signal is given, the vehicle or bicycle shall be appropriately marked showing it to be an official police vehicle or police bicycle; or

"(2) if the officer giving such signal is not utilizing an official police vehicle or police bicycle at the time the signal is given, the officer shall be in uniform, prominently displaying such officer's badge of office at the time the signal is given."

"[An] '[a]ppropriately marked' official police vehicle or police bicycle shall include, but not be limited to, any police vehicle or bicycle equipped with functional emergency lights or siren or both and which the emergency lights or siren or both have been activated for the purpose of signaling a driver to stop a motor vehicle." K.S.A. 2012 Supp. 8-1568(e)(2).

The evidence at trial was that Escobar was signaled to stop by several pursuing officers and that he failed or refused to bring his vehicle to a stop. Uniformed Officer Goddard activated his patrol vehicle's lights and siren and positioned his vehicle in front of Escobar's truck "nose to nose." Escobar made an aggressive turn to avoid the patrol car and took off at a high rate of speed.

Generally, when a defendant has been convicted of a higher offense, but the evidence supports only a lesser included offense, the case must be remanded to the district court to resentence the defendant for the lesser offense. *State v. Wilt*, 273 Kan. 273, 278, 44 P.3d 300 (2002); *State v. Kingsley*, 252 Kan. 761, 782, 851 P.2d 370 (1993); *State v. Moss*, 221 Kan. 47, 50, 557 P.2d 1292 (1976); *State v. Harris*, 46 Kan. App. 2d 848, 850, 264 P.3d 1055 (2011); *State v. Ferris*, 19 Kan. App. 2d 180, 184-85, 865 P.2d 1058 (1993); *State v. Smith*, 4 Kan. App. 2d 149, Syl. ¶ 7, 603 P.2d 638 (1979).

We note the jury was instructed that it had to find both that the police officer was in uniform and in an appropriately marked vehicle. The jury found Escobar guilty of the higher crime, but the evidence supports a finding of guilt of the lesser crime.

Therefore, following the ruling in *Wilt*, we remand with instructions that Escobar be sentenced for misdemeanor fleeing and eluding.

We need not address the jury instruction question raised by Escobar as we are reversing.

Because Escobar was also convicted of criminal possession of a firearm, we turn now to the issue of the opening general instruction that Escobar contends was clearly erroneous.

Escobar claims that the district court's introductory comments to the jury that a mistrial would cause inconvenience and expense was reversible error because the comments violated his constitutional right to a fair trial before an impartial jury. He argues the instruction burdened the jury with considerations outside the evidence produced at trial. Escobar did not object to the instruction at trial.

After the jury was impaneled, the court gave some introductory remarks and implored the jury not to communicate with anyone about the case by person, email, text, tweet, or blog and not to access information about the case from other sources. Then, the judge stated:

> "That is why it is so important that you base your verdict only on information you receive in this courtroom. You must not engage in any activity or be exposed to any information that might unfairly affect the outcome of this case.
> "Any juror who violates these restrictions I've explained to you jeopardizes the fairness of these proceedings and a mistrial could result that would require the entire trial process to start over. And as you can imagine, a mistrial is a tremendous expense and inconvenience to the parties, the Court, and to taxpayers."

Unpreserved claims of instructional error, regardless of when the alleged error occurred during the trial process, are reviewed for clear error. *State v. Tahah*, 302 Kan. 783, 793, 358 P.3d 819 (2015), *cert. denied* 577 U.S. ___ (February 29, 2016); see K.S.A. 2015 Supp. 22-3414(3). Our review is in two steps. First, the court must consider whether there was any error at all by considering whether the instruction at issue was both legally and factually appropriate, employing an unlimited review of the entire record; (2) if the court finds error, it must assess whether it is firmly convinced the jury would have reached a different verdict without the error. *State v. Clay*, 300 Kan. 401, 408, 329 P.3d 484, *cert. denied* 135 S. Ct. 728 (2014).

Escobar contends that the instruction was given in error, citing *State v. Salts*, 288 Kan. 263, 266, 200 P.3d 464 (2009). In *Salts*, the jury was furnished an instruction both orally and in writing before deliberations that provided, in part:

> "'Like all cases, this is an important case. If you fail to reach a decision on some or all of the charges, that charge or charges are left undecided for the time being. It is then up to the state to decide whether to resubmit the undecided charge(s) to a different jury at a later time. Another trial would be a burden on both sides.'" 288 Kan. at 264.

The *Salts* court held that the instruction "another trial would be a burden on both sides" was given in error because the language was inaccurate—a second trial may be a burden to some, but not all in a criminal case—and that the language was confusing. 288 Kan. at 266. But the error was not reversible because there was no real possibility of a different verdict had the instruction not been given. 288 Kan. at 267.

We hold that recent precedent controls the outcome of this question. Our Supreme Court recently held: "In a criminal case, it is not error for a district court to provide a preliminary instruction to jurors informing them that a mistrial due to juror misconduct

10

would result in a tremendous expense and inconvenience to the parties, the court, and the taxpayers." *Tahah*, 302 Kan. 783, Syl. ¶ 6; *State v. Gauger*, 52 Kan. App. 2d 245, Syl. ¶ 4, 366 P.3d 238 (2016). In *Tahah*, the district court gave a preliminary instruction to a newly impaneled jury that the jurors' consideration of outside material could result in a mistrial, which "'is a tremendous expense and inconvenience to the parties, the Court and the tax payers.'" 302 Kan. at 792.

The *Tahah* court rejected an invitation to extend *Salts*—the case relied upon by Escobar—to a preliminary jury instruction warning of the dangers of mistrials resulting from juror misconduct. It noted that *Salts* involved an *Allen*-type instruction, which is an instruction that encourages jurors to reach a unanimous verdict to avoid a mistrial.

> "The preliminary jury instruction here, however, is not an *Allen* instruction. Its character and purpose are entirely different. The instruction occurred at the start of trial, before the presentation of evidence, and warned jurors of the dangers of a mistrial resulting from their own misconduct. As such, its coercive effect (to prevent juror misconduct) is entirely proper and justified. Moreover, because its purpose is proper, the instruction is factually accurate. The prospect of a mistrial due to juror misconduct— especially when viewed from the pretrial vantage point of the parties—is, in fact, equally inconvenient and undesirable to both parties. In particular, it interferes with the defendant's right to a speedy resolution of the criminal allegations against him or her. Given this significant distinction, the *Salts* rationale is inapplicable here.
>
> "Juror misconduct imposes grave costs not only to the parties and others involved in the trial process, but significantly to the integrity of our jury trial criminal justice system itself, which depends on the honest and ethical behavior of jurors. We do not need to look far to see the ease with which today's smartphone equipped jurors can commit misconduct—perhaps even innocently. [Citation omitted.] In light of these considerations, we hold that the warning against juror misconduct contained in PIK Civ. 4th 101.12 is both legally and factually accurate in the criminal context as well as the civil." 302 Kan. at 795.

11

The instruction here was likewise given at the start of trial, before the presentation of any evidence, and warned jurors of a mistrial resulting from their own misconduct.

When reviewed in context, however, it is apparent that the district court here was referring to mistrials caused by jury misconduct, not to mistrials generally. Before stating that mistrials were a tremendous expense and inconvenience, the court had just admonished the jury at length not to discuss the case with anyone, whether by person or social media, and not to consider any outside sources of information about the trial. Then the judge stated:

> "That is why it is so important that you base your verdict only on information you receive in this courtroom. You must not engage in any activity or be exposed to any information that might unfairly affect the outcome of this case.
> "*Any juror who violates these restrictions I've explained to* you jeopardizes the fairness of these proceedings and a mistrial could result that would require the entire trial process to start over. And as you can imagine, a mistrial is a tremendous expense and inconvenience to the parties, the Court, and to taxpayers." (Emphasis added.)

That instruction differs sharply from the one given in *Salts*, where the jury was instructed before deliberations that a mistrial could result if you "'fail to reach a decision on some or all of the charges,'" and the instruction given in *Neely* that a hung jury was an "'abhorrence'" to taxpayers. *Salts*, 288 Kan. at 264; *Neely v. Travelers Ins. Co.*, 141 Kan. 691, 693, 42 P.2d 957 (1935). The instruction here is indistinguishable from the instruction given in *Tahah* and can only reasonably be understood to refer to mistrials caused by juror misconduct when read in context. See *Tahah*, 302 Kan. at 795.

We are duty bound to follow Kansas Supreme Court precedent, unless there is some indication the Supreme Court is departing from its previous position. *State v. Belone*, 51 Kan. App. 2d 179, 211, 343 P.3d 128, *rev. denied* 302 Kan. ___ (September

14, 2015). Thus, in accordance with *Tahah*, the instruction here had no coercive effect and was not erroneous.

We affirm Escobar's criminal possession of a firearm conviction. We reverse the felony fleeing and eluding a police officer conviction and remand with directions to sentence Escobar for misdemeanor fleeing and eluding.

Affirmed in part, reversed in part, and remanded with directions.