IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 119,739

STATE OF KANSAS,
*Appellee*,

v.

DE'ANGELO MEGLE MARTINEZ,
*Appellant*.

SYLLABUS BY THE COURT

When a prosecutor's arguments before a jury are challenged as an attempt to shift the burden of proof from the State to a defendant or as a violation of the right against compulsory self-incrimination found in the Fifth Amendment to the United States Constitution and in § 10 of the Kansas Constitution Bill of Rights, an appellate court asks if the language used was outside the wide latitude allowed a prosecutor because it was of such a character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify or to shift the burden of proof. If so, it is error. But if the statement is merely a fair comment pointing out a lack of evidence to support a defense or to corroborate a defendant's argument regarding holes in the State's case, it is generally not error. Under the facts of this case, there was no error.

Appeal from Shawnee District Court; DAVID DEBENHAM, judge. Opinion filed July 24, 2020. Affirmed.

*Kristen B. Patty*, of Wichita, argued the cause and was on the brief for appellant.

1

*Kurtis Wiard*, assistant solicitor general, argued the cause, and *Derek Schmidt*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

LUCKERT, C.J.:  In a direct appeal, De'Angelo Martinez challenges his convictions for first-degree premeditated murder and several other crimes. He contends the prosecutor erred in the State's closing arguments by saying, "The defense has speculated about other peoples [*sic*] motives, but the State has actually presented evidence." Martinez contends the prosecutor impermissibly (1) shifted the burden of proof from the State to the defense and (2) infringed on the protection against compulsory self-incrimination found in the Fifth Amendment to the United States Constitution and in § 10 of the Kansas Constitution Bill of Rights.

We hold the prosecutor did not commit error because the State's argument was within the wide latitude allowed in closing arguments. We thus affirm Martinez' convictions.

FACTUAL AND PROCEDURAL BACKGROUND

Martinez' convictions arise from a drive-by shooting that killed Brian Miller. The various people involved in the incident were gang members, alleged gang members, or individuals affiliated with gang members. At trial, the jury heard about a series of events that started before either Martinez or Miller became directly involved.

2

The day before the shooting, Christopher Pattillo and Miller's brother orally sparred at a shopping mall. They purportedly exchanged derogatory comments about rival gangs.

The next day, Pattillo and his then-girlfriend traveled through the neighborhood where Miller's brother, sister, and seven-year-old nephew lived together. As Pattillo and his girlfriend drove by, they saw Miller's brother standing outside, and one of them saw Miller's brother reach toward his waistband in a manner suggesting he was reaching for a firearm. They left the neighborhood, and it was at this point that Martinez became involved.

Pattillo joined with Martinez and two other men. The four men formed a plan to return and confront Miller's brother. Pattillo and Martinez went to an apartment where Martinez retrieved a firearm. The four men then got into a minivan. As the men approached the Miller siblings' residence, Miller was outside, and his seven-year-old nephew was inside the house. Martinez fired several shots out the window of the minivan toward the house, according to his fellow passengers. Miller was struck twice, once fatally. Several bullets hit the residence.

The State brought Martinez to trial, but the first empaneled jury could not reach a unanimous verdict. The trial court declared a mistrial and empaneled a second jury. At the second trial, the State presented evidence that Miller's brother was a member of the Fifth Block gang and Martinez was a member of a rival gang, known as the 357 Crips. The State presented the theory that Martinez was motivated to shoot members of the Fifth Block gang because some members of the Fifth Block had acted disrespectfully toward members of the 357 Crips gang by, among other things, urinating on the grave of a 357 Crips member. The State also presented evidence that Martinez got out of the van

3

after the shooting and said, "[T]hat's for my boy," followed by the nickname of a deceased fellow gang member.

During closing arguments, Martinez' counsel responded to the State's argued theory about Martinez' motive for firing the gun. Martinez' counsel argued that Pattillo was the shooter. He also questioned the credibility of the other occupants of the van who had identified Martinez as the shooter by pointing out inconsistencies in their testimony and suggesting they were trying to downplay their own culpability in order to get favorable plea offers from the State. Defense counsel summarized these arguments by saying, "[E]ach and every one of them that testified, had a substantial and compelling motive to basically, sing the same song, at least related to the State's claim that Mr. Martinez had committed this particular homicide."

In the State's rebuttal argument, the prosecutor responded to the defense's arguments by making the comment at issue in this appeal: "Why on earth would someone just shoot at someone for no good reason? The State has presented evidence that explains that. The defense has speculated about other peoples [*sic*] motives, but the State has actually presented evidence."

Defense counsel objected on the basis that it was an improper comment on Martinez' right not to present evidence. But the trial court overruled the objection, concluding the State had made an allowable response to defense counsel's argument about the lack of motive on the part of Martinez.

The jury convicted Martinez of first-degree premeditated murder, an alternative count of felony murder, criminal discharge of a firearm at an occupied dwelling,

aggravated assault, and aggravated endangering of a child. The court sentenced Martinez to a hard 50 life sentence and another 86 months for the other convictions.

ANALYSIS

Martinez contends the prosecutor impermissibly sought to shift the burden of proof from the State and made "a direct and unequivocal comment on Martinez' failure to testify or otherwise present any evidence in his defense" in violation of *Griffin v. California*, 380 U.S. 609, 85 S. Ct. 1229, 14 L. Ed. 2d 106 (1965). Martinez raised only one of these objections during the closing, but we do not require an objection to preserve issues of prosecutorial error made during a closing argument. *State v. Chandler*, 307 Kan. 657, 683, 414 P.3d 713 (2018).

We evaluate claims of prosecutorial error under the two-step process of error and prejudice. First, to determine whether error has occurred, we must decide whether "the act complained of falls outside the wide latitude afforded to prosecutors to conduct the State's case in a way that does not offend the defendant's constitutional right to a fair trial." *Chandler*, 307 Kan. 657, Syl. ¶ 6. If error is found, we must then determine whether the error prejudiced the defendant's due process rights to a fair trial. 307 Kan. 657, Syl. ¶ 6; see *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016).

As to the first step, if Martinez' characterization of the prosecutor's statement is correct, the prosecutor erred. Prosecutors generally cannot suggest that a defendant has the burden to prove his or her innocence. See *State v. Williams*, 299 Kan. 911, 937-41, 329 P.3d 400 (2014) (collecting cases). And prosecutors generally err if they comment on a defendant's failure to testify. *Griffin*, 380 U.S. at 611, 613-14; *State v. Ninci*, 262 Kan. 21, 48, 936 P.2d 1364 (1997); see K.S.A. 60-439. Further, a prosecutor cannot elicit

5

testimony from a detective that a defendant invoked the right to remain silent during a police interview. *State v. Cosby*, 285 Kan. 230, 244-47, 169 P.3d 1128 (2007). Nor may a prosecutor cross-examine a defendant about the reasons why he did not provide his exculpatory statement to police once he was charged. See *State v. Hernandez*, 284 Kan. 74, 92-94, 159 P.3d 950 (2007).

On the other hand, prosecutors are given wide latitude in discussing the evidence or the lack of evidence supporting a defense theory. *Williams*, 299 Kan. at 934, 937-41. In *State v. Haygood*, 308 Kan. 1387, 1401, 430 P.3d 11 (2018), for example, we considered whether a prosecutor erred by pointing out evidence that fit with the State's theory of a premeditated killing and was inconsistent with the defense theory of imperfect self-defense. The defense argued the State had shifted the burden to the defense by pointing out a lack of evidence that supported a defense theory. We recited the rule that a prosecutor cannot try to shift the burden of proof to a defendant, but we held a prosecutor does not shift the burden by simply pointing out a lack of evidence supporting a defense theory. See 308 Kan. at 1401.

We have similarly rejected arguments that commenting on the evidence or lack of evidence implicates a defendant's right against self-incrimination. See *State v. Higgenbotham*, 264 Kan. 593, 603, 957 P.2d 416 (1998) (prosecutor's repeated references to defendant as a man with many secrets were not a comment on defendant's decision not to testify but were permissible references to evidence regarding defendant's secretive conduct); *Ninci*, 262 Kan. at 48 (State's comment that the only evidence supporting defendant's version of events came from a videotaped police interview was found not to be a comment on defendant's failure to testify but a dissection of the statements in the video).

Often the line between permissible and impermissible argument is context dependent. See *State v. Blansett*, 309 Kan. 401, 412-13, 435 P.3d 1136 (2019). We thus do not consider a prosecutor's statement in isolation. We ask whether the language used was outside the wide latitude allowed a prosecutor because it was of such a character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify or to shift the burden of proof. If so, it is error. See *Sherman*, 305 Kan. at 109; *Ninci*, 262 Kan. at 48. But if the statement is merely a fair comment "pointing out a lack of evidence to support a defense or to corroborate a defendant's argument regarding holes in the State's case," it is generally not error. *Williams*, 299 Kan. at 940.

Here, the prosecutor did not comment on Martinez' failure to testify or argue Martinez had to prove that he lacked a motive or that the minivan passengers had a motive to lie. Instead, the prosecutor pointed out there was evidence—more direct than a mere inference—establishing that Martinez was motivated to shoot Miller's brother because of Miller's comments the day before at the mall and because Miller was linked to a gang that had allegedly urinated on the grave of a gang member with whom Martinez was allied. The prosecutor correctly pointed out that the State was the party that had presented this evidence in court.

By stating that obvious truth, the prosecutor did not suggest that the defense had any burden to do something in response or that it meant that Martinez needed to testify and explain his actions to the jury. Instead, the State's response more pointedly addressed the credibility of the witnesses and their motivations, not the credibility, obligations, or rights of Martinez.

Nor did the prosecutor shift the burden or comment on Martinez' failure to testify by pointing out the defense's argument rested on an inference. The prosecutor merely

pointed out the weakness of an inference as compared to direct evidence. Again, there was no suggestion that Martinez was expected to prove through his testimony or other direct evidence what motivated the witnesses to testify in a certain way.

We hold the prosecutor's comments, when read in context, appropriately explained how the evidence supported the State's theory of the case. Because we find that the prosecutor's statements did not fall outside the wide latitude afforded prosecutors to conduct the State's case and did not offend the defendant's constitutional right to a fair trial, we need not consider the second prong of the prosecutorial error analysis relating to the effect of any error on the verdict.

Affirmed.

PATRICK D. MCANANY, Senior Judge, assigned.[1]

_____

[1]**REPORTER'S NOTE:** Senior Judge McAnany was appointed to hear case No. 119,739 under the authority vested in the Supreme Court by K.S.A. 20-2616 to fill the vacancy on the court by the retirement of Chief Justice Lawton R. Nuss.