NOT DESIGNATED FOR PUBLICATION

No. 121,383

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JOE N. ELLIS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; CHRISTOPHER M. MAGANA, judge. Opinion filed September 17, 2021. Affirmed.

*Hope E. Faflick Reynolds*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BUSER, P.J., POWELL and HURST, JJ.

PER CURIAM: After a fatal vehicular collision, the State charged Joe N. Ellis with involuntary manslaughter, aggravated battery, driving while suspended, and failure to stop. A jury convicted him of all charges. On appeal, Ellis raises two issues. First, he contends the State committed reversible prosecutorial error during its opening and closing statements. Second, he challenges the revised Kansas Sentencing Guidelines Act (KSGA) as unconstitutional because it violates his federal and state constitutional rights to a jury trial by permitting judicial fact-finding of prior convictions.

1

Upon our review, we find no error and affirm the convictions and sentences.

FACTUAL AND PROCEDURAL BACKGROUND

While driving down a highway in the early hours of August 22, 2017, Dillan Varnell witnessed a Hyundai Santa Fe drive through an intersection without stopping and collide with a utility truck. Varnell stopped his vehicle and ran over to the car. Upon reaching the car, Varnell noticed the driver's side door was open, but no one was in the driver's seat. Varnell then saw a bleeding, unconscious man, later identified as Mark Standerfer, lying in the front passenger's seat.

Varnell and two passengers from his vehicle tried without success to open the front passenger's side door. Varnell then turned his attention to the driver of the utility truck, who indicated he did not need immediate help. While his head was turned toward the truck, and away from the car, Varnell heard a voice from behind him. At trial, Varnell testified he heard the man, later identified as Ellis, say, "'[Expletive], I don't have my license. I can't go to jail.'"

Varnell had not seen anyone else at the collision site. He testified that he asked Ellis, if he had been driving the car, and Ellis said, "'No. It wasn't me. I wasn't driving. My friend was.'" Varnell testified that Ellis told him the driver of the vehicle was Standerfer, the unconscious man lying in the passengers' seat.

Multiple law enforcement officers responded to the scene and conducted an investigation. Deputy Michael Ellington testified at trial that upon arrival, he found Standerfer in the passenger seat, bloody, unresponsive, and struggling to breathe. After alerting the dispatcher to Standerfer's condition, Deputy Ellington spoke to Ellis, who told him that Standerfer had been driving but "jumped over into the passenger's seat after the crash had taken place."

2

Deputy John Rolston reported to the scene soon after Deputy Ellington. Deputy Rolston observed Sanderfer's location in the passenger seat and noticed that his injuries were "conducive with an unrestrained passenger hitting [the] windshield." Deputy Rolston noted the passenger seat was reclined almost completely back, there was damage to the windshield, Standerfer was not wearing a seatbelt, and "he appear[ed] to have been in that position—in that seat position when the collision occurred." Based on his training and experience, Deputy Ralston testified it was "[a]bsolutley not" possible that Sanderfer was the driver of the car at the time of the collision.

Deputy Ralston also spoke with Ellis at the scene. He testified that Ellis "initially told [him] that there [were] only two people in that vehicle when it had wrecked. And after that [Ellis] told [him] he was in the backseat of the vehicle when it happened." The deputy testified that Ellis gave inconsistent information regarding his location within the car. First, Ellis told him he was lying down in the backseat. Then, Ellis told him he was seat belted in the rear seat behind the front passenger's seat. He also told Deputy Ralston that he was seat belted in the rear driver's side seat.

As part of the accident investigation, Deputy Ralston testified that he examined Ellis' chest and determined the "red mark" on Ellis' chest was "very indicative to [him] of someone sitting in the driver's seat or, in the very least, on the driver's side of the vehicle." The deputy also testified that upon inspecting the seat belts in the Santa Fe, the driver's seatbelt was the only one that had been in use at the time of the collision.

Deputy Cody Rexroat also spoke to Ellis at the scene. Deputy Rexroat testified that Ellis told him a man named Robert, who Ellis called "Mississippi," was also inside the car at the time of the collision. Deputy Rexroad testified that Ellis' explanation of Mississippi's location in the car "changed a couple times." Deputy Rexroad testified that Ellis initially claimed that Mississippi was in the passenger's seat, but he later indicated

3

that Mississippi was driving. Then, according to Deputy Rexroad, "I think [Ellis] flip-flopped back to the—Standerfer was driving and Mississippi was in the passenger [seat]."

A blood draw soon after the accident revealed Ellis had "a significant concentration" of methamphetamine in his system.

As a result of the collision, Standerfer sustained multiple facial fractures, a skull fracture, brain injuries, and a cervical spine fracture that rendered both legs and one arm immobile. Standerfer died about 10 days after the collision. The cause of death was multiple blunt force injuries. The driver of the utility truck suffered serious back injuries from the collision.

Ellis was charged with involuntary manslaughter under K.S.A. 2017 Supp. 21-5405(a)(3), (b)(2), aggravated battery under K.S.A. 2017 Supp. 21-5413(b)(3)(A), (g)(2)(C), driving while suspended under K.S.A. 2017 Supp. 8-262(a)(1), and failure to stop under K.S.A. 8-1528. The jury convicted Ellis of all charges. He was sentenced to 108 months' imprisonment with a concurrent 6-month jail term and 36 months' postrelease supervision.

Ellis appeals.

CLAIMS OF PROSECUTORIAL ERROR

On appeal, Ellis contends the State committed reversible prosecutorial error during opening and closing statements. We will consider these claims individually. Preliminarily, however, it is important to state our standards of review that will guide our analysis of both claims.

An appellate court uses a two-step process to evaluate claims of prosecutorial error—error and prejudice. *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016).

"To determine whether prosecutorial error has occurred, the appellate court must decide whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial. If error is found, the appellate court must next determine whether the error prejudiced the defendant's due process rights to a fair trial. In evaluating prejudice, we simply adopt the traditional constitutional harmlessness inquiry demanded by *Chapman* [*v. California*, 386 U.S. 18, 23-24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)]. In other words, prosecutorial error is harmless if the State can demonstrate 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.' [Citation omitted.]" *Sherman*, 305 Kan. at 109.

This "wide latitude" extends to allegedly erroneous comments made in both opening statements and closing arguments. *State v. Tahah,* 302 Kan. 783, 787, 358 P.3d 819 (2015).

We note that during trial Ellis did not contemporaneously object to either the prosecutor's opening remarks or closing argument. Still, appellate courts will review claims of prosecutorial error for the first time on appeal. See *State v. Butler*, 307 Kan. 831, 864, 416 P.3d 116 (2018). Our court, however, may consider the presence or absence of a contemporaneous objection in our analysis of the alleged error. 307 Kan. at 864.

*Prosecutor's Comment During Opening Statement*

The prosecutor began her opening statement by stating, "May it please the Court. '[Expletive], I can't go to jail for this. I don't have a license.' That's what the defendant Joe

Ellis told Dillan Varnell." During the trial, under direct examination, Varnell testified that he heard Ellis state, "'[Expletive], I don't have my license. I can't go to jail'" at the scene of the collision.

During cross-examination, Ellis' counsel repeatedly questioned Varnell regarding differences between his trial testimony and the written statement he provided to law enforcement officers about the collision. The written statement was not made a part of our record but under cross-examination Varnell acknowledged that his written statement indicated that Ellis had said, "[Expletive], I don't have a license," but did not mention anything about going to jail.

On redirect examination, Varnell testified that he spoke to about five officers at the scene. He noted that two officers were recording the conversation, one of which asked him to write a written statement. On recross-examination, defense counsel questioned Varnell again about whether he ever told an officer that Ellis said he could not "go to jail over this." Varnell testified:

> "Honestly, right now in this moment with the back and forth between the prosecution and defense, I've—honestly just a little mixed up, because one is saying one thing, one is saying the other. I'm not going to say yes or no to either of them. I don't want to not answer the question, but I don't want to lie either."

Varnell testified that he "was very shook up" at the scene because he "had never seen anything like this in person."

On appeal, based on the discrepancy between the prosecutor's opening statement and Varnell's testimony under cross-examination and his written statement, Ellis contends the prosecutor committed reversible error by misstating the evidence while lacking a good faith basis to believe Varnell's recollection of Ellis' comments would be admitted in

6

evidence. Ellis asserts that despite his trial counsel challenging Varnell's testimony during cross-examination, the prosecutor's opening statement "primed the jury to believe Mr. Ellis made an incriminating statement."

"'Opening statements are given to assist the jury in understanding what each side expects the evidence will prove and to frame the questions the jury will have to decide'; a prosecutor errs when straying outside the evidence they expect to be able to prove." *State v. Timley*, 311 Kan 944, 950, 469 P.3d 54 (2020) (quoting *State v. De La Torre*, 300 Kan. 591, 609, 331 P.3d 815 [2014]). And in crafting these statements, a prosecutor is permitted to discuss the evidence and draw "'reasonable inferences from that evidence.'" *Tahah*, 302 Kan. at 788 (quoting *State v. Crawford*, 300 Kan. 740, 749, 334 P.3d 311 [2014]).

Ellis' one-paragraph argument is disinguous. He does not mention that during direct examination at trial, Varnell testified that Ellis said, "'[Expletive], I don't have my license. I can't go to jail,'" which is part and parcel of what the prosecutor said in his opening statement: "'[Expletive], I can't go to jail for this. I don't have a license.'" While Varnell was thoroughly cross-examined on this point and ultimately acknowledged that his written statement was his best recollection, Varnell's testimony on direct examination shows that the prosecutor did not stray beyond the evidence she expected to present. See *Timley*, 311 Kan at 950.

The prosecutor's challenged opening comment was almost a mirror-image of Varnell's testimony on direct examination at trial. Given this fact, Ellis has failed to show the prosecutor anticipated her opening statement to be inaccurate. To the contrary, all things considered, the prosecutor's comment during her opening statement was well within the ambit of the testimony heard by the jury. Ellis' parsing of words between what Varnell testified he heard Ellis say, compared to what Varnell told officers at the scene, is not persuasive. Regardless of what Varnell told officers at the scene, Varnell testified he

7

heard Ellis make the incriminating comments. These facts were admitted in evidence, and as a result, the prosecutor did not misstate them in her opening statement. We find no error.

*Prosecutor's Comment During Closing Argument*

During her closing argument, the prosecutor argued, "There is no evidence of any other cause of Mr. Standerfer's death, other than the injuries he received in the car wreck." Based on this sentence, Ellis makes a brief argument that the prosecutor "improperly shift[ed] the burden to the defense, implying that Mr. Ellis had a duty to rebut the State's evidence about Mr. Standerfer's cause of death. Mr. Ellis had no such duty."

"Prosecutors generally cannot suggest that a defendant has the burden to prove his or her innocence." *State v. Martinez*, 311 Kan. 919, 922, 468 P.3d 319 (2020); see *State v. Williams*, 299 Kan. 911, 937-41, 329 P.3d 400 (2014) (collecting cases). Even so, prosecutors are given wide latitude to discuss the evidence or the lack of evidence supporting a defense theory. *Williams*, 299 Kan. at 934, 937-41. The *Martinez* court opined that "[o]ften the line between permissible and impermissible argument is context dependent." 311 Kan. at 923. The court added:

> "We thus do not consider a prosecutor's statement in isolation. We ask whether the language used was outside the wide latitude allowed a prosecutor because it was of such a character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify or to shift the burden of proof. If so, it is error. But if the statement is merely a fair comment 'pointing out a lack of evidence to support a defense or to corroborate a defendant's argument regarding holes in the State's case,' it is generally not error [Citations omitted]." 311 Kan. at 923 (quoting *Williams*, 299 Kan. at 940.)

8

Before making the challenged comment, the prosecutor informed the jury he was "going to take some time to go through what it is exactly that the State has to prove." The prosecutor spoke to the jury about how "it's for [the jury] to determine the weight and credit to be given the testimony of a witness," then recounted the State's burden of proof:

"So let's look at each of the things the State has to prove and the evidence in support of those.

"First of all, we have to prove that the defendant killed Mark Standerfer. For this, we've relied primarily on—well, primarily on the testimony of [the Sedgwick County Deputy Coroner, medical examiner, and forensic pathologist]. She will tell you—or she told you that the defendant suffered from multiple blunt force injuries, that those included facial fractures, various skull fractures, cerebral swelling, and spinal injuries.

"She told you that in a review of the medical records at the scene, he—Mr. Standerfer had a coma scale of 3, which means in her words, I think, practically nothing.

"There is no evidence of any other cause of Mr. Standerfer's death, other than the injuries he received in the car wreck."

Viewing the prosecutor's statement in context, makes clear that the prosecutor was not trying to shift the burden of proof onto Ellis. Rather, the prosecutor's argument was typical: Stating the element of the crime, highlighting the trial evidence supporting the element, and arguing that the State has proven the element by evidence—and/or lack of contrary evidence—beyond a reasonable doubt. In short, the prosecutor properly pointed out that the State had the burden of proof and noted that the State had presented evidence to prove that element at trial.

Moreover, as the State argues, the prosecutor "simply noted that the cause of death was not in dispute." The State points out this undisputed fact was consistent with Ellis' closing argument, where defense counsel began his closing argument by telling the jury "this case boils down to a pretty simple question, who was driving the vehicle? . . . *We're*

9

*not really fighting about some of the other things here.* We're fighting about who was actually in the driver's seat that blew through that stop sign." (Emphasis added.)

By stating the obvious fact that Standerfer died from injuries sustained in the collision, the prosecutor did not suggest that the defense had any burden to rebut its evidence. Instead, the State's argument pointedly addressed the forensic evidence that supported its conclusion that Standerfer's fatal injuries were caused by the collision. By arguing that there was no evidence of any other cause of death, the prosecutor was simply emphasizing that the State had proven beyond a reasonable doubt this essential element of the crime of involuntary manslaughter. We find no prosecutorial error.

CLAIM OF FEDERAL AND STATE CONSTITUTIONAL ERRORS IN SENTENCING

Ellis contends the KSGA violates his federal and state constitutional rights to a jury trial because it permits judicial fact-finding of prior convictions. Those findings, Ellis argues, enhance a defendant's sentence without first requiring the State to prove those convictions to a jury beyond a reasonable doubt. According to Ellis, judicial fact-finding violates the Sixth Amendment to the United States Constitution, as set forth in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000) and section 5 of the Kansas Constitution Bill of Rights.

Ellis concedes that he did not challenge the constitutionality of the KSGA at sentencing, and ordinarily a defendant may not raise a constitutional issue for the first time on appeal. But he claims two exceptions to this rule. First, he asserts his newly asserted issue involves only a question of law arising on proved or admitted facts that are finally determinative of the case. Second, he claims consideration of this issue is necessary to serve the ends of justice or prevent the denial of fundamental rights.

10

At the outset, constitutional grounds for reversal asserted for the first time on appeal are not properly before the appellate court for review. *State v. Daniel*, 307 Kan. 428, 430, 410 P.3d 877 (2018).

Regarding the first exception to this rule, in the event we agreed with Ellis' constitutional contention, our holding would not be finally determinative of the case because it would require a remand to the district court for a jury to be empaneled to consider Ellis' criminal history and based on the jury's factual findings, resentencing by the district court.

Regarding the second exception, we do not find it necessary to consider this issue to serve the ends of justice or prevent a denial of fundamental rights because the Kansas Supreme Court has considered and denied similar constitutional claims objecting to judicial fact-finding of prior convictions at sentencing.

Regarding Ellis's claim under the Sixth and Fourteenth Amendments to the United States Constitution, he candidly concedes the Kansas Supreme Court has rejected the argument he makes about *Apprendi* and criminal-history scores in *State v. Ivory*, 273 Kan. 44, 46-48, 41 P.3d 781 (2002). Since then, our Supreme Court has reaffirmed *Ivory* numerous times. See *Williams*, 299 Kan. at 941; *State v. Baker*, 297 Kan. 482, 485, 301 P.3d 706 (2013). Because there is no indication that our Supreme Court is departing from its earlier position in *Ivory*, our court must follow that precedent. See *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017) (Kansas Court of Appeals is duty-bound to follow Kansas Supreme Court precedent unless some indication court is departing from previous position.).

Regarding Ellis' claim under section 5 of the Kansas Constitution Bill of Rights, recently our Supreme Court considered and rejected a similar argument in *State v. Albano,* 313 Kan. 638, 657, 487 P.3d 750 (2021). The Kansas Supreme Court held:

11

"Section 5 of the Kansas Constitution Bill of Rights does not guarantee defendants the right to have a jury determine the existence of sentence-enhancing prior convictions under the revised Kansas Sentencing Guidelines Act (KSGA), K.S.A. 2020 Supp. 21-6801 et seq.; no authority substantiates that defendants had such a jury trial right at common law when our state Constitution was adopted." 313 Kan. 638, Syl. ¶ 4.

Given that our Supreme Court has considered and denied Ellis' federal and state constitutional sentencing arguments in prior cases, it is not necessary to consider this issue to serve the ends of justice or prevent a denial of fundamental rights.

Finally, while we find that Ellis has failed to show that either exception merits our consideration of this constitutional issue for the first time on appeal, we also note:

"The decision to review an unpreserved claim under an exception is a prudential one. *State v. Parry*, 305 Kan. 1189, 1192, 390 P.3d 879 (2017); *State v. Frye*, 294 Kan. 364, 369, 277 P.3d 1091 (2012). Even if an exception would support a decision to review a new claim, we have no obligation to do so. *Parry*, 305 Kan. at 1192." *State v. Gray*, 311 Kan. 164, 170, 459 P.3d 165 (2020).

Because the constitutional sentencing issue was not raised in the district court, the two exceptions to the general rule precluding our consideration of such an issue are not applicable, and our Supreme Court has previously considered and denied similar claims in prior opinions, we decline to review this issue for the first time on appeal.

Affirmed.