NOT DESIGNATED FOR PUBLICATION

No. 127,960

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JEFFREY A. HICKMAN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; DAVID KAUFMAN, judge. Submitted without oral argument. Opinion filed February 27, 2026. Affirmed.

*Grace E. Tran*, of Kansas Appellate Defender Office, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before WARNER, C.J., HURST and BOLTON FLEMING, JJ.

PER CURIAM: A jury found Jeffrey A. Hickman guilty of aggravated battery. On appeal, Hickman argues tha t the district court erred by failing to give his requested jury instruction on a private person's use of force in making a lawful arrest. Hickman also alleges that the State committed prosecutorial error in its closing arguments by commenting on the credibility of a witness. Finally, Hickman alleges cumulative error.

As to Hickman's first issue, we find that the district court did not err because the jury instruction requested by Hickman was not legally or factually appropriate. As to the

1

issue of prosecutorial error, while we find one of the three challenged statements made by the prosecutor in closing arguments was in error, the State has proven beyond a reasonable doubt that the erroneous statement did not affect the outcome of the trial. Because of this single, harmless error, Hickman's cumulative error argument is also without merit. Accordingly, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Jeffrey Hickman was convicted by a jury of aggravated battery. This incident began when Hickman realized his car had been stolen from his residence. According to Hickman's testimony at his trial, this was not the first time Hickman's vehicle had been stolen, and he had placed a GPS tracker on the vehicle to prevent future thefts. After realizing his vehicle had been stolen again, Hickman utilized the tracker attached to his vehicle to determine its location. Hickman then called 911 to report the stolen vehicle and stayed on the phone with the police dispatcher while driving his wife's vehicle to the location indicated by the tracker.

When Hickman arrived, he saw that his vehicle was parked in the driveway of a house. As he parked on the other side of the street, Hickman saw two men exit the house. The men came toward Hickman, looked at his vehicle, and then turned back toward the house. Hickman exited his vehicle and told the man closest to him, later identified as D.H., to "freeze." Hickman later explained he did not want the two men to run away before the police arrived to investigate his stolen vehicle. Hickman put his arm around D.H.'s chest and held a gun in his other hand.

As Hickman held D.H., the second man, later identified as H.K., started yelling and threatening to shoot Hickman. Hickman realized that the situation had become "hectic" and led D.H. to a neighbor's house and knocked on the door. Hickman hoped someone would answer and call 911 but no one answered. Hickman then led D.H. to the

2

middle of the street to wait for the police. Hickman stated that someone started driving his stolen vehicle toward them, and because he feared being run over, he fired two warning shots in the air. H.K. jumped out of the vehicle and ran back into the house, only to exit again with something shiny and silver in his hand. H.K. yelled at Hickman, so Hickman fired two more warning shots. H.K. retreated.

Hickman stated that as he lowered the gun, D.H. lunged at him. A scuffle ensued and the gun went off, shooting D.H. in the back. Hickman told D.H. not to move, and help was on the way. Hickman turned off the stolen vehicle, which was still running, and then ran to his wife's vehicle to call 911 again. He went back to D.H. and told him again that help was on the way.

D.H., the victim in the case, portrayed a different version of events with his trial testimony. D.H. stated he was on the roof of the house that morning when he saw a vehicle pull up that looked like his sister's car. He came down from the roof, through the house, and out the front door to talk to who he believed was his sister. H.K. joined him. When D.H. did not see anyone in the vehicle, both men turned around and started walking back toward the house.

D.H. testified that Hickman got out of the vehicle and told him to "freeze" or he would get shot. H.K. ran back inside the house and yelled some "stupid stuff" from the window, including something about a weapon he referred to as an "AK." D.H. stated that Hickman placed him in a headlock with the gun pointed at his head. Hickman took D.H. to a neighbor's house and knocked on the door, but no one answered. Hickman pulled D.H. back into the street. While Hickman was holding D.H., D.H. pulled out a knife he had in his pocket and put it near Hickman's wrist. D.H. stated he was afraid to attack Hickman though, because he was unsure if he was quick enough to defend himself. According to D.H., Hickman then pushed him to the ground and shot him.

3

At the conclusion of the trial, a jury convicted Hickman of aggravated battery, a severity level 4 person felony. Hickman was sentenced to 38 months in prison. Hickman timely appeals.

## ANALYSIS

### DID THE DISTRICT COURT ERR BY FAILING TO INSTRUCT THE JURY ON A PRIVATE PERSON'S USE OF FORCE IN MAKING A LAWFUL ARREST?

Hickman requested the following jury instruction based on PIK Crim. 4th 52.270 (2021 Supp.):

"The defendant claims his conduct was permitted because he was a private person making a lawful arrest. A private person who makes a lawful arrest need not retreat or cease efforts to make a lawful arrest because of resistance or threatened resistance to the arrest. He is permitted to

- use physical force against another person including using a weapon which he reasonably believes to be necessary to effect the arrest, or defend himself from bodily harm while making the arrest; or
- threaten by words or actions to use physical force against another person— including a threat to cause death or great bodily harm[;] or
- display to another person a firearm which he reasonably believes to be necessary to effect the arrest; or to defend himself from bodily harm while making the arrest.

"The Defendant is permitted to use physical force likely to cause death or great bodily harm only when he reasonably believes that such force is necessary to prevent death or great bodily harm to himself.

"Reasonable belief requires both a belief on the part of defendant and the existence of facts that would persuade a reasonable person to that belief."

4

Hickman's requested instruction was considered within a jury instruction conference outside the presence of the jury and prior to the jury being instructed. Significant discussion of Hickman's proposed instruction occurred.

The district court questioned defense counsel on the issue of probable cause:

"And so, you believe that your client, under these facts, there exist probable cause to arrest [D.H.] because he walks to your client's car, turns around, begins to walk away. There's another person out there, H.K., who is not at the car, per your client's testimony. He's down the street, you know, I would assume, within 30 feet or so, at least not next to the car. And the probable cause is because [D.H.] 's—excuse me—Hickman's stolen car is in the front yard of this house, along with some other car, that there's probable cause to believe [D.H.] stole the car. That's—that's what a lawful arrest would be predicated on because it has to be looked, really, through the eyes of law enforcement. So that's—you're arguing to me that your client had probable cause to arrest [D.H.] or attempt to?"

Defense counsel responded that he believed under these facts probable cause existed. The district court denied the requested jury instruction, finding:

"This is—this is one of these issues that I have to decide as a matter of law whether it's a citizen's arrest. It's similar to agg escape from custody. It's a matter of law whether a person was in custody. A jury doesn't decide, you know, if the elements to an arrest have been met. That's a legal determination. No, the instruction will not be given. It's not appropriate. [B]ut Defense objection noted."

*Standard of Review*

The Kansas Supreme Court has provided a three-step process for an appellate court to analyze jury instructions. The steps include:

5

"(1) determine whether the appellate court can or should review the issue, in other words, whether there is a lack of appellate jurisdiction or a failure to preserve the issue for appeal; (2) consider the merits of the claim to determine whether error occurred below; and (3) assess whether the error requires reversal—in other words, whether the error can be deemed harmless." *State v. Hollins*, 320 Kan. 240, 242, 564 P.3d 778 (2025).

Here, the first step is satisfied because there are no jurisdictional or preservation issues to resolve. Under the second step, we consider the merits of the claim to determine "whether error occurred below." *Hollins*, 320 Kan. at 242. "At the second step, this court considers whether the instruction was legally and factually appropriate." *State v. Crosby*, 312 Kan. 630, 639, 479 P.3d 167 (2021).

Appellate courts review the legal appropriateness of an instruction de novo. *State v. Plummer*, 295 Kan. 156, 163, 283 P.3d 202 (2012). In determining whether an instruction was factually appropriate, courts must determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction. See *State v. Mendez*, 319 Kan. 718, 727, 559 P.3d 792 (2024).

*Hickman's requested instruction was neither legally nor factually appropriate.*

Hickman argues that his requested instruction, which was based on PIK Crim. 4th 52.270, was both legally and factually appropriate. The authority for PIK Crim. 4th 52.270 is found in K.S.A. 21-5228(a):

"A private person who makes, or assists another private person in making a lawful arrest is justified in the use of any force which such person would be justified in using if such person were summoned or directed by a law enforcement officer to make such arrest, except that such person is justified in the use of deadly force only when such person reasonably believes that such force is necessary to prevent death or great bodily harm to such person or another." K.S.A. 21-5228(a).

Here, there are two phrases from the statute at issue. First, we must consider the facts in a light most favorable to Hickman and decide whether Hickman was "making a lawful arrest." Second, under that same standard, we must determine whether Hickman's use of force was justified. If we conclude that Hickman was not making a "lawful arrest," we need not consider whether Hickman's use of force was justified. K.S.A. 21-5228(a).

Hickman argues his arrest, or attempted arrest, was lawful pursuant to K.S.A. 22-2403(1):

> "A person who is not a law enforcement officer may arrest another person when:
>
> (1) A felony has been or is being committed and the person making the arrest has probable cause to believe that the arrested person is guilty thereof."

Neither party takes issue with the underlying crime—theft of a motor vehicle—being classified as a felony. But the plain language of K.S.A. 22-2403(1) also requires that Hickman had "probable cause to believe" D.H. was guilty of committing the theft of Hickman's vehicle. We therefore consider whether the facts, considered in a light most favorable to Hickman, support a probable cause finding.

Probable cause has been defined as:

> "the reasonable belief that a specific crime has been committed and that the defendant committed the crime. Probable cause exists where the facts and circumstances within the arresting officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *State v. Ramirez*, 278 Kan. 402, 406, 100 P.3d 94 (2004).

Hickman argues he had probable cause to believe D.H. stole his vehicle because D.H. was in close proximity to his stolen vehicle and also exited a home where the stolen vehicle was parked in the driveway. But presence and proximity alone do not necessarily

7

constitute probable cause. See *State v. Beaver*, 41 Kan. App. 2d 124, 132, 200 P.3d 490 (2009).

While it is true D.H. was present at a home where Hickman's stolen vehicle was found, probable cause must be tied specifically to D.H.'s actions. "Where the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person." *Ybarra v. Illinois*, 444 U.S. 85, 91, 100 S. Ct. 338, 62 L. Ed. 2d 238 (1979), *reh. denied* 444 U.S. 1049 (1980).

Hickman's suggestion that D.H.'s proximity to the stolen vehicle and his presence at the home constitutes probable cause has been rejected in another context—under a constructive possession theory. See *Beaver*, 41 Kan. App. 2d at 132 (finding where a suspect is nothing more than a social guest on the premises, probable cause does not exist). In *Beaver*, the State argued that "Beaver's presence at the home and his proximity to the illegal drugs and drug paraphernalia found on the kitchen table amount to constructive possession of those items." 41 Kan. App. 2d at 132. The panel rejected that argument: "Without more than Beaver's mere presence and proximity to the illegal drugs, there was no probable cause to believe that he was in constructive possession of the illegal drugs and drug paraphernalia found on the kitchen table." 41 Kan. App. 2d at 132.

Here, while it is a different context, there is nothing beyond D.H.'s presence in the home where the stolen vehicle was parked, and his proximity to the stolen vehicle when he walked by it, to support a probable cause finding. There was no evidence that Hickman saw D.H. driving the vehicle or was told D.H. was seen in or driving the vehicle. Hickman was not aware of D.H.'s personal belongings being in the vehicle and in fact none of his personal items were found in the vehicle. Hickman had not received any statements tying D.H. to the vehicle. The fact that H.K. drove the vehicle out of the driveway after Hickman pulled a gun on D.H. is irrelevant because "mere propinquity to

8

others independently suspected of criminal activity" does not, without more, demonstrate probable cause. 444 U.S. at 91.

Probable cause did not exist to support Hickman's attempted arrest of D.H.; therefore, even when viewed in the light most favorable to Hickman, there was insufficient evidence that the arrest he was attempting to make was lawful. See *Mendez*, 319 Kan. at 727. Because Hickman's requested instruction required a lawful arrest, and there was no probable cause to support an arrest, Hickman's requested instruction was factually inappropriate. Because we find Hickman was not in the process of making a lawful arrest, we need not consider whether the facts support a finding that Hickman's use of force was justified under K.S.A. 21-5228(a).

Hickman's proposed instruction was also legally inappropriate. The instruction was based on PIK Crim. 4th 52.270 which draws its authority from K.S.A. 21-5228(a). Under the plain language of the statute, K.S.A. 21-5228(a) clearly requires a "lawful arrest." "When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words." *State v. Keys*, 315 Kan. 690, 698, 510 P.3d 706 (2022).

Since Hickman's attempted arrest was not lawful, because it was not supported by probable cause, it could not form the basis for Hickman's requested jury instruction. The instruction was not legally appropriate because there was no underlying *lawful* arrest. The district court did not err in failing to give Hickman's requested instruction because the instruction was neither legally nor factually appropriate.

MUST HICKMAN'S CONVICTION BE REVERSED DUE TO PROSECUTORIAL ERROR?

*Standard of Review*

In considering the issue of prosecutorial error, we consider "whether there was error, and whether that error was prejudicial." *State v. Boatwright*, 320 Kan. 385, 392, 568 P.3d 865 (2025).

> "When determining whether prosecutorial error occurred, this court decides whether the prosecutorial acts at issue fall outside the wide latitude prosecutors have to conduct the State's case and seek a conviction in a manner that does not impair the defendant's constitutional right to a fair trial. If it finds error, this court next determines whether the error prejudiced the defendant's due process rights to a fair trial. To decide whether there was prejudice, this court adopts the constitutional harmlessness inquiry set out in *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). Under this standard, prosecutorial error is deemed harmless if the State can demonstrate beyond a reasonable doubt that the error did not affect the outcome of the trial in light of the entire record, that is, there is no reasonable possibility the error contributed to the verdict." *Boatwright*, 320 Kan. at 392.

Hickman asserts the State improperly commented on D.H.'s credibility during closing arguments. Hickman highlights three statements, the first in the State's closing argument and the last two in its rebuttal:

- "What reason do you have to doubt [D.H.] on that? Doesn't it make sense?"

- "What reason do you have to doubt [D.H.]?"

- "What reason do you have to doubt [D.H.] when he tells you that he was pushed down and shot in back? The State would submit, absolutely none, and you should find him guilty of intentional aggravated battery knowingly."

"[A] prosecutor should not comment on the credibility of his or her own witnesses." *State v. Elnicki*, 279 Kan. 47, 64, 105 P.3d 1222 (2005). The State is given wide latitude to allow prosecutors to highlight evidence and discuss inferences reasonably drawn from that evidence. *State v. Timley*, 311 Kan. 944, 949-50, 469 P.3d 54 (2020). But the Kansas Supreme Court has "repeatedly held that telling the jury that a witness told the truth falls outside that broad latitude." *State v. Jordan*, 317 Kan. 628, 648, 537 P.3d 443 (2023).

Kansas law draws a line between "arguments expressing an opinion about a witness' credibility and arguments discussing legitimate factors a jury may consider in assessing credibility." *Jordan*, 317 Kan. at 648; see *State v. Hachmeister*, 311 Kan. 504, 519, 464 P.3d 947 (2020); *State v. Anderson*, 308 Kan. 1251, 1261, 427 P.3d 847 (2018). While expressing an opinion "falls outside the bounds of proper argument," discussing factors the jury may consider does not. *Jordan*, 317 Kan. at 648.

In *Jordan*, the prosecutor discussed a witness' testimony during rebuttal. Specifically, the prosecutor stated, "'Ask yourself, what motivation does Ms. Cunningham have to not be truthful about that particular fact? I submit to you that there's absolutely no reason. What did she have to gain from that?'" 317 Kan. at 647-48. The prosecutor's statement was made within the context of recounting the witness' testimony, including multiple instances where the witness had told the same story. 317 Kan. at 647-48.

"In assessing whether error occurred, we do not consider a statement in isolation but look to the context in which the disputed statements were made." *Boatwright*, 320 Kan. at 392. "Often the line between permissible and impermissible argument is context dependent." *Jordan*, 317 Kan. at 650 (quoting *State v. Martinez*, 311 Kan. 919, 923, 468 P.3d 319 [2020]). The jury may consider a witness' motive to be dishonest in assessing the witness' credibility. For this reason, prosecutors are allowed to use "rhetorical

11

questions to encourage the jury to consider whether a witness has any motive to be untruthful." *Jordan*, 317 Kan. at 649. The court in *Jordan* found that the rhetorical question was permissible, as was the prosecutor answering her own question stating, "I submit to you that there's absolutely no reason." 317 Kan. at 649-50. The court explained that the prosecutor walked very close to the line "by suggesting that Cunningham had no motive to be untruthful. But by tying her comment to the evidence and to legitimate factors bearing on witness credibility, her argument fell just within the wide latitude afforded prosecutors in closing argument, even if by only the slightest margin." 317 Kan. at 650-51.

The first error alleged by Hickman was in the State's closing argument, the latter two in the State's rebuttal. The prosecution spent much of its closing argument painting Hickman as someone who wanted confrontation, while characterizing D.H. as someone who did not. The first statement Hickman claimed as error, "What reason do you have to doubt [D.H.] on that? Doesn't it make sense?" was made in this context. The prosecution was presenting its theory that Hickman was angry and looking for trouble and D.H. was in the wrong place at the wrong time. Like the statement made in *Jordan*, when considered in context, this rhetorical question falls within the wide latitude afforded prosecutors, "even if by only the slightest margin." 317 Kan. at 650-51.

The second statement also falls within that latitude. The prosecutor's statement, "What reason do you have to doubt [D.H.]?" is nearly the same as the first statement. Here, this short, rhetorical question was not made in error.

But the third statement by the prosecutor gives us pause:

"What reason do you have to doubt [D.H.] when he tells you that he was pushed down and shot in back? The State would submit, absolutely none, and you should find him guilty of intentional aggravated battery knowingly."

12

Here, the State goes beyond a simple, rhetorical question. Instead, the prosecutor asks for the third time what reason the jury would have to doubt D.H. and then answers the question by stating "absolutely none." But the prosecutor's question was not just "what reason do you have to doubt [D.H.]," as before. During this statement, the prosecutor gave an opinion on D.H.'s credibility as it related to proving the elements of the crime—that Hickman pushed him down and shot him in the back. As the Kansas Supreme Court pointed out, the rhetorical question in *Jordan* nearly crossed the line, and these comments go beyond a simple, rhetorical question. 317 Kan. at 650-51.

"While prosecutors have broad latitude in crafting their arguments and drawing reasonable inferences from the evidence, we have repeatedly held that telling the jury that a witness told the truth falls outside that broad latitude." *Jordan*, 317 Kan. at 648. Here, the third statement by the prosecutor was made in error.

Having found error, we now turn to whether that error was harmless. We adopt the constitutional harmlessness inquiry set out in *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). "Under this standard, prosecutorial error is deemed harmless if the State can demonstrate beyond a reasonable doubt that the error did not affect the outcome of the trial in light of the entire record, that is, there is no reasonable possibility the error contributed to the verdict." *Boatwright*, 320 Kan. at 392.

"We may consider the district court's jury instructions and the strength of the evidence against the defendant in determining whether any prosecutorial error is harmless." *State v. Barnes*, 320 Kan. 147, 163, 563 P.3d 1255 (2025) (citing *State v. Blevins*, 313 Kan. 413, 437, 485 P.3d 1175 [2021]). While the strength of the evidence may be considered, because prejudice may be found in even a strong case, it should not be the primary focus. See *State v. Sherman*, 305 Kan. 88, 111, 378 P.3d 1060 (2016).

13

Here, we find that the State has met its burden of proof to show beyond a reasonable doubt that the error did not affect the outcome of Hickman's trial. See *Boatwright*, 320 Kan. at 392. While this was a case that boiled down to credibility, we find that the jury was properly instructed as to the evidence it could consider.

In Instruction No. 1, the jury was instructed: "Statements, arguments, and remarks of counsel are intended to help you in understanding the evidence and in applying the law, but they are not evidence. If any statements are made that are not supported by evidence, they should be disregarded." In Instruction No. 2, the jury was instructed: "It is for you to determine the weight and credit to be given the testimony of each witness." These instructions would have guided the jury to disregard the statements of counsel, and to determine the credibility of the witnesses as part of a jury determination.

Hickman was also allowed to raise self-defense as a defense in Instruction No. 7:

"The defendant raises self-defense as a defense. Evidence in support of this defense should be considered by you in determining whether the State has met its burden of proving that the defendant is guilty. The State's burden of proof does not shift to the defendant."

The jury was further instructed on self-defense in Instruction No. 8:

"Defendant claims his use of a force was permitted as self-defense.

"Defendant is permitted to use against another person physical force that is likely to cause death or great bodily harm only when and to the extent that it appears to him and he reasonably believes such force is necessary to prevent death or great bodily harm to himself from the other person's imminent use of unlawful force. Reasonable belief requires both a belief by defendant and the existence of facts that would persuade a reasonable person to that belief.

14

"When use of force is permitted as self-defense, there is no requirement to retreat."

These jury instructions, considered together, informed the jury as to their responsibilities to consider the evidence and disregard statements made by counsel. The instructions also properly allowed the jury to consider Hickman's claim that he acted in self-defense. The jury instructions mitigated potential harm to Hickman that occurred due to the single error committed by the prosecutor.

In addition, we find significant evidence that was properly before the jury that would allow it to determine that Hickman's version of events was not credible. The jury considered evidence that Hickman brought a gun with him as he attempted to find his vehicle. Hickman saw two men approach his vehicle, and told one of them, D.H., to "freeze" while he held him at gunpoint. Hickman also forcibly took D.H. to a neighbor's house and then held him in the middle of the street. The jury considered and rejected Hickman's testimony that D.H. lunged for his gun and that he did not intend to shoot D.H. After considering the entire record, we find that the State has demonstrated beyond a reasonable doubt that the prosecutor's error did not contribute to the verdict. See *Boatwright*, 320 Kan. at 392.

Finally, Hickman raises the issue of cumulative error. But because we have found just a single error, and found that error to be constitutionally harmless, the cumulative error rule does not apply. "The cumulative error rule does not apply if there are no errors or only a single error." *State v. Lowry*, 317 Kan. 89, 100, 524 P.3d 416 (2023).

Affirmed.

15