NOT DESIGNATED FOR PUBLICATION

No. 126,716

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

YUSUF TREMEL MCCRAY,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; TYLER ROUSH, judge. Submitted without oral argument. Opinion filed December 13, 2024. Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., GARDNER and CLINE, JJ.

PER CURIAM: Yusuf Tremel McCray was convicted of criminal use of a weapon under K.S.A. 21-6301(a)(18). This statute requires the State to prove the defendant knowingly possessed a firearm and did so while knowingly convicted of a domestic violence offense within the preceding five years. He argues there was insufficient evidence presented at trial that he knew his municipal conviction for bodily harm domestic battery made him a domestic violence offender under K.S.A. 21-6301(m)(1). But after a careful review of the record, we find sufficient evidence supports his conviction.

McCray also argues K.S.A. 21-6301(a)(18) violates the Second Amendment to the United States Constitution, relying mainly on the analysis in *United States v. Rahimi*, 61 F.4th 443 (5th Cir. 2023). But the United States Supreme Court reversed that decision in *United States v. Rahimi*, 602 U.S. 680, 144 S. Ct. 1889, 219 L. Ed. 2d 351 (2024). As the Supreme Court noted in its decision, it is within America's historical tradition to "restrict[] gun use to mitigate demonstrated threats of physical violence." 602 U.S. at 698. We find K.S.A. 21-6301(a)(18) constitutionally restricts firearm possession from individuals who have not merely made demonstrated threats of physical violence, but who have already been convicted as domestic violence offenders.

McCray finally contends the prosecution misstated the facts and law in closing arguments. While we agree certain facts were misstated, we find the misstatements harmless because they did not affect the outcome of the trial in light of the entire record. We do not find the prosecutor misstated the law.

FACTUAL AND PROCEDURAL BACKGROUND

In the overnight hours of December 17, 2022, law enforcement was dispatched to the home McCray shared with his romantic partner after she called to report a domestic disturbance in which McCray had pulled out a gun. As officers approached the home, they heard yelling coming from inside the residence.

Once inside, the officers split up and spoke separately with McCray and his partner. On the way to the bedroom to speak to McCray, one of the officers saw a rifle box on the living room couch. The officer's body camera recorded his interview of McCray in the bedroom. In the footage, McCray mentioned he was "on papers," meaning probation. While describing what happened, McCray said his partner called the police and informed them McCray had a gun. McCray then stated, "which I'm not supposed to have." McCray also told the officer that, sometime during the argument, he began

2

gathering some of his belongings because he planned to leave the residence and stay with a friend.

Meanwhile McCray's partner informed the other officer there was a gun in the box on the couch and explained that McCray had retrieved the gun as he was packing his belongings. When one of the officers opened the box, he found a rifle and two loaded magazines. When he ran a background check, he learned McCray was prohibited from having a firearm. At that point, the officer took McCray into custody, placed him in his patrol car, and read McCray his *Miranda* rights. See *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). McCray agreed to speak with the officer and acknowledged that he owned the rifle.

The State charged McCray with criminal use of a weapon under K.S.A. 21-6301(a)(18). The complaint specified that McCray knowingly possessed a rifle within five years of being convicted of a misdemeanor domestic violence offense. On September 23, 2022, McCray had been convicted of violating Wichita Municipal Ordinance (W.M.O.) § 5.10.025(a)(l), a misdemeanor crime of bodily harm domestic battery.

McCray filed a pretrial motion to dismiss the case, arguing he had no notice that he could not possess firearms and that K.S.A. 21-6301(a)(18) violated his Second Amendment right to bear arms. The district court denied the motion. McCray also filed a pretrial motion in limine to exclude evidence of his prior criminal record and any prior bad acts. The district court granted the motion except for elements of the charged crime required to be proved by the State. This included all mention of the issue of domestic violence other than as an element of the charge. The parties negotiated a stipulation to the existence of the conviction that did not mention the word "domestic violence." McCray waived his right to a jury trial on whether he has a prior domestic violence conviction and instead entered a stipulation agreeing the conviction existed.

At trial, the State entered the stipulation into evidence. It stated McCray was convicted of a misdemeanor violation of W.M.O. § 5.10.025(a)(l), as defined in K.S.A. 21-6301(m)(1), within the five years preceding December 17, 2022, the date of his domestic altercation. It also entered the journal entry of that conviction, which stated McCray had been found guilty on September 23, 2022, and received probation. The reference that the conviction was for "domestic battery" was redacted, as was the case number because it included "DV."

McCray's "Plea and Waiver of Trial" entered in municipal court was admitted along with the journal entry, also with redactions. Importantly, the words "domestic violence" were redacted from the sentence that read: "I understand that if this is a conviction of domestic violence I cannot possess any firearm for 5 years from the date of conviction. Possession of a firearm after a conviction of domestic violence is a felony in Kansas."

For purposes of the appellate record, McCray entered a separate stipulation, confirming he was convicted of domestic battery under W.M.O. § 5.10.025(a)(l) and that conviction is a domestic violence offense as defined in K.S.A. 21-6301(m)(1). This last stipulation was not presented to the jury.

McCray put on no evidence at trial. In closing, his counsel did not argue that McCray was unaware of the conviction. Instead, his counsel argued McCray was unaware that this conviction prohibited him from possessing a firearm. In opening statement, McCray's counsel claimed no one involved in that conviction—the judge, the defense attorney, or the prosecutor—told McCray about this prohibition.

The jury convicted McCray as charged. McCray was sentenced to 18 months' probation with an underlying prison sentence of 7 months. This is a direct appeal of his conviction.

I. Was There Insufficient Evidence to Convict McCray of Criminal Use of a Weapon Under K.S.A. 21-6301(a)(18)?

A. *Standard of review*

When examining the sufficiency of the evidence in a criminal case, an appellate court reviews all evidence in the light most favorable to the State to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. Appellate courts should "only look to the evidence in favor of the verdict to determine whether the essential elements of a charge are sustained" but should not "reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations." *State v. Zeiner*, 316 Kan. 346, 350, 515 P.3d 736 (2022). This court will only reverse a guilty verdict "in rare cases where the testimony is so incredible that no reasonable fact-finder could find guilt beyond a reasonable doubt." 316 Kan. at 350.

B. *Under* Beasley, *to support a conviction under K.S.A. 21-6301(a)(18), the State must prove the defendant knowingly possessed a firearm and the defendant did so while knowingly convicted of a domestic violence offense within the preceding five years.*

The State charged McCray under K.S.A. 21-6301(a)(18), which provides that "(a) Criminal use of weapons is knowingly: . . . (18) possessing any firearm by a person who, within the preceding five years, has been convicted of a misdemeanor for a domestic violence offense, or a misdemeanor under a law of another jurisdiction which is substantially the same as such misdemeanor offense."

McCray correctly argues that to sustain a conviction for unlawfully possessing a firearm under this statute, the State must prove beyond a reasonable doubt not only that McCray knowingly possessed a firearm, but also that he did so while knowingly

convicted of a domestic violence offense within the preceding five years. See *State v. Beasley*, 64 Kan. App. 2d 203, 208, 547 P.3d 617 (2024), *rev. denied* 319 Kan. __ (August 30, 2024).

McCray does not claim he did not knowingly possess the gun at issue. Instead, he contends the State failed to prove he knew he was prohibited from possessing it. He believes no evidence supports a finding that he knew his prior domestic battery conviction under W.M.O. § 5.10.025(a)(l) was a domestic violence offense as defined in K.S.A. 21-6301(m)(1). And because he did not know his prior conviction was classified as domestic violence under K.S.A. 21-6301(m)(1), McCray argues he did not know he was prohibited from possessing a firearm under K.S.A. 21-6301(a)(18).

C. *The documents from McCray's municipal conviction presented sufficient evidence showing he knew he was a domestic violence offender as defined in K.S.A. 21-6301(m)(1).*

"Domestic violence" as used in K.S.A. 21-6301, "means the use or attempted use of physical force, or the threatened use of a deadly weapon, committed against a person with whom the offender is involved or has been involved in a dating relationship or is a family or household member." K.S.A. 21-6301(m)(l). McCray argues his municipal journal entry for bodily harm domestic battery is insufficient to establish that conviction was for a domestic violence offense because bodily harm may be caused by means other than physical force.

This court soundly rejected the same sufficiency of the evidence argument in *Beasley*, a recent, nearly identical case. In *Beasley*, we held there was sufficient evidence to convict Beasley of knowingly possessing a firearm while he was knowingly convicted of a domestic violence offense within the preceding five years. 64 Kan. App. 2d at 210. Like McCray, the State charged Beasley with criminal use of weapons in violation of

K.S.A. 21-6301(a)(18). Also like McCray, Beasley had been found guilty of "'Domestic Battery—Bodily Harm'" under W.M.O. § 5.10.025(a)(l). 64 Kan. App. 2d at 204.

On appeal, Beasley made the same argument McCray makes here regarding the difference between the ordinance's definition of bodily harm and the statute's definition of domestic violence. In rejecting this argument, this court made several observations:

> "[The Wichita] ordinance defines bodily harm domestic battery as 'knowingly or recklessly causing bodily harm by a family or household member to a family or household member or knowingly or recklessly causing bodily harm by an individual in a dating relationship to an individual with whom the offender is involved or has been involved in a dating relationship.' W.M.O. § 5.10.025(a)(1). In the context of committing a battery, Kansas courts have long defined bodily harm as "'any touching of the victim against [the victim's] will, *with physical force*, in an intentional hostile and aggravated manner.'" (Emphasis added.) So by definition, the conviction for bodily harm domestic battery required a touching with physical force. Thus, the journal entry of Beasley's municipal court conviction is sufficient evidence to prove the physical force element in the definition of domestic violence at K.S.A. 2019 Supp. 21-6301(m)(1). [Citations omitted.] *Beasley*, 64 Kan. App. 2d at 209.

Likewise, McCray's journal entry evidencing his conviction of the same bodily harm domestic battery offense provides sufficient evidence to prove the physical force element here.

As for whether Beasley and McCray knew they had been convicted of a domestic violence offense, we found Beasley's journal entry showed he pled no contest to bodily harm domestic battery, was convicted, and sentenced to probation. The document further exhibited that Beasley signed the journal entry of probation, had fees imposed, and was advised of his right to appeal. We noted: "All these things are evidence that Beasley was active in his case and therefore aware of his conviction." 64 Kan. App. 2d at 210.

McCray's municipal journal entry displays similar, if not identical, indications showing he was active in his case and knew of his conviction. His journal entry stated he pled guilty to W.M.O. § 5.10.025(a)(1) which is bodily harm domestic battery, was convicted, and sentenced to probation. He also signed a probation order, had fees imposed, and was advised of his right to appeal. Also, the proximity of McCray's conviction for domestic battery—September 23, 2022—to the date of the altercation here—December 17, 2022 (less than three months later)—provides more evidence that McCray knew of this conviction at the time of the altercation. Like McCray, Beasley claimed a lack of awareness of the legal definitions and their impact on his ability to possess a firearm. But, just like Beasley, McCray "is presumed to know the law and the legal effect of his actions." *Beasley*, 64 Kan. App. 2d at 210.

In *Beasley*, the "only" evidence the State presented to support that Beasley knew he had been convicted of a domestic violence offense was the journal entry of sentencing from Wichita Municipal Court. 62 Kan. App. 2d at 208. Unlike *Beasley*, the State here also offered McCray's "Plea and Waiver of Trial" in his municipal case, which is a document he signed. While the redactions of the words domestic violence undercut the evidentiary value of the admonition in the document informing McCray that he cannot possess a firearm for five years from the date of his conviction, McCray still acknowledged that he "underst[ood] the charges(s) pending against [him]" and that he had been "informed of the possible penalties for the charge(s)." The municipal court judge also certified that McCray had "been fully informed of the charges against him." Therefore, this document also supports the jury's verdict.

Given the language of the documents in McCray's municipal case compared with the reasoning in *Beasley*, we find the State provided sufficient evidence for the jury to find McCray knew of his prior conviction and knew that conviction was for a domestic violence offense.

D. *Other evidence shows McCray knew he was prohibited from possessing a firearm.*

Setting aside the issue of whether McCray knew he had been convicted of a domestic violence offense, the State points to other evidence that shows McCray knew he was prohibited from possessing a firearm at the time of the domestic altercation here. Besides the journal entry and the stipulations, the State entered Officer Christopher Chisholm's body camera footage at trial as an exhibit. In the footage, McCray described what happened in the domestic altercation. At one point, he said his partner called the police and informed them he had a gun. McCray then stated, "which I'm not supposed to have." And in another clip from Officer Chisholm's body camera footage, Chisholm asked McCray when he bought the gun. McCray responded, "a few months back, at the beginning of this year." Chisholm then followed up and asked McCray, "if it was before everything else happened?" and McCray responded, "before all that happened." The State argues this statement "[i]n light of defendant's previous statement that he was not supposed to have a gun" can be "understood as further acknowledgement" by McCray that he knew he was prohibited from possessing a firearm.

We find these admissions from McCray—particularly the first one—along with the municipal journal entry and stipulation provide sufficient evidence that McCray knew he was prohibited from possessing a firearm, along with knowing his prior conviction was for a domestic violence offense. We therefore affirm McCray's conviction for criminal use of a weapon under K.S.A. 21-6301(a)(18).

II. Does K.S.A. 21-6301(a)(18) Violate the Second Amendment to the United States Constitution?

McCray next challenges the constitutionality of K.S.A. 21-6301(a)(18), arguing it violates the Second Amendment to the United States Constitution. He asserts that neither firearms restrictions for domestic violence, nor firearms restrictions for misdemeanor

convictions, are rooted in American history and tradition, citing *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1, 30, 142 S. Ct. 2111, 213 L. Ed. 2d 387 (2022), for support.

A. *McCray has only preserved his constitutional challenge to K.S.A. 21-6301(a)(18)'s disarmament of domestic violence offenders.*

McCray filed a pretrial motion to dismiss the case, arguing that K.S.A. 21-6301(a)(18) as applied in this context to him, violates his Second Amendment right to bear arms. He also asserted K.S.A. 21-6301(a)(18) is unconstitutional because it prohibits domestic violence offenders from possessing firearms. This facial challenge relied on *Bruen*'s requirement that restrictions to the Second Amendment "must impose a comparable burden to existing firearms control schemes at the time of the Constitution's creation, or be comparably justified to the regulatory purposes of restrictions in place at the document's creation." He contended "no analogous structure to K.S.A. 21-6301(a)(18) . . . can be located in the history of American firearms restrictions."

On appeal, McCray contends that "K.S.A. 2022 Supp. 21-6301(a)(18) contains two predicate conditions for a conviction that must each be individually found constitutional under the Second Amendment in order for Mr. McCray's conviction to be upheld:  a ban on domestic violence offenders from possessing firearms and a ban on misdemeanor offenders from possessing firearms." But McCray did not raise the second part of his argument to the district court. He only mentioned the concept of misdemeanor offenders in his motion when he noted he was arrested and charged with criminal use of a weapon, "on the grounds that he had a misdemeanor domestic violence conviction from earlier in the year." He did not, however, argue that restricting misdemeanor offenders from possessing firearms violates the Second Amendment.

McCray does not acknowledge that his misdemeanor claim is being raised for the first time on appeal. He only contends that he "challenged the constitutionality of K.S.A. 2022 21-6301(a)(18)" in his motion to dismiss. But there is a substantial difference between arguing K.S.A. 21-6301(a)(18)'s restriction on domestic violence offenders possessing a firearm is unconstitutional, like he did in his motion, and claiming for the first time on appeal that "a ban on misdemeanor offenders from possessing firearms" violates the Second Amendment.

McCray asks us to consider any unpreserved constitutional arguments under one of the exceptions to the general rule that unpreserved issues cannot be raised for the first time on appeal. *State v. Johnson*, 309 Kan. 992, 995, 441 P.3d 1036 (2019). He contends these exceptions apply because: (1) "[w]hether the statute is constitutional under the Second Amendment is purely a legal question[,] . . . [t]here are no facts absent from the record that would be needed to decide this single issue, and it is finally determinative of the case under Mr. McCray's motion to dismiss"; and (2) "[t]his issue deals with Mr. McCray's right to keep and bear arms, which is a fundamental right. *McDonald v. City of Chicago*, 561 U.S. 742, 778[, 130 S. Ct. 3020, 177 L. Ed. 2d 894] (2010)." In making this statement, he does not apply these exceptions to his misdemeanor argument.

The State contends we should address any arguments McCray presented to the district court—i.e., K.S.A. 21-6301(a)(18) violates the United States Constitution facially and as applied—but not address McCray's argument about misdemeanor offenses because it was not presented to the district court. In light of McCray's failure to raise his arguments as to the constitutionality of prohibiting persons convicted of misdemeanor offenses from possessing a firearm to the district court and his failure to explain why we can or should consider these arguments for the first time on appeal, we find them unpreserved. We will therefore assess McCray's constitutional challenge to disarming domestic violence offenders but will not address McCray's argument about misdemeanor offenders.

11

B. *Standard of review*

A statute's constitutionality is a question of law subject to unlimited review. *State v. Gonzalez*, 307 Kan. 575, 579, 412 P.3d 968 (2018).

C. *America's tradition of firearm regulation allows the government to disarm individuals who present a credible threat to the physical safety of others, which includes those convicted of domestic violence offenses.*

The Second Amendment states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. If "the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify [a firearm] regulation the government . . . must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 17 (citing *District of Columbia v. Heller*, 554 U.S. 570, 128 S. Ct. 2783, 171 L. Ed. 2d 637 [2008]).

The *Bruen* Court adopted a test for assessing firearm regulations. It held: "Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" 597 U.S. at 17. To analyze whether a current firearm regulation is consistent with the country's historical tradition, the Court held the government is required to "identify a well-established and representative historical *analogue*, not a historical *twin*." 597 U.S. at 30.

Neither party appears to contest that the Second Amendment presumptively protects McCray's right to bear arms. McCray argued to the district court that there is no analogue to K.S.A. 21-6301(a)(18) that can be located in the history of American firearms restrictions. According to him, the first time such a regulation existed was in 1968. However, he provided no source for either of these statements.

McCray makes two arguments on appeal, that in light of the United States Supreme Court's decision in *Rahimi*, are concessions. McCray filed his brief on February 9, 2024, before *Rahimi* was decided by the Court on June 21, 2024.

Most importantly, earlier in his brief, McCray twice notes 18 U.S.C. § 922(g) is the "federal equivalent" of Kansas' criminal use of a weapon statute, K.S.A. 21-6301. In *Rahimi*, the defendant challenged section 922(g)(8) on its face, arguing the statute violated the Second Amendment right to keep and bear arms. The United States Supreme Court disagreed. This "federal statute prohibits an individual subject to a domestic violence restraining order from possessing a firearm if that order includes a finding that he 'represents a credible threat to the physical safety of [an] intimate partner,' or a child of the partner or individual." *Rahimi*, 602 U.S. at 684 (quoting 18 U.S.C. § 922[g][8]).

The Court had "no trouble concluding that section 922(g)(8) survives Rahimi's facial challenge. Our tradition of firearm regulation allows the Government to disarm individuals who present a credible threat to the physical safety of others. Section 922(g)(8) can be applied lawfully to Rahimi." *Rahimi*, 602 U.S. at 700. Since section 922(g)(8) is constitutional, by McCray's logic, K.S.A. 21-6301 must be constitutional under the Second Amendment as well. This concession alone could be enough to affirm McCray's conviction. But a deeper understanding of why the Court reached its conclusion in *Rahimi*, and why K.S.A. 21-6301(a)(18) is constitutional under that reasoning, is enlightening.

McCray's second concession regards part of the reasoning in *Rahimi*. He contends that in the 18th and 19th centuries, "[f]ollowing common law principles, a domestic violence offender at that time could be taken to court for 'breach of the peace' and would have to put forth a surety for good behavior." McCray claims "[t]his surety resembled a modern-day restraining order or protection from abuse (PFA) order, requiring that the abuser cease this behavior or forfeit the bond." The *Rahimi* Court likewise found that

13

historically, "surety laws could be invoked to prevent all forms of violence, including spousal abuse." 602 U.S. at 695. Critically, those "surety laws also targeted the misuse of firearms." 602 U.S. at 696.

Similarly, "going armed laws prohibited 'riding or going armed, with dangerous or unusual weapons, [to] terrify[] the good people of the land.'" 602 U.S. at 697. Because such conduct "disrupted the 'public order' and '"le[d] almost necessarily to actual violence,"'" "the law punished these acts with 'forfeiture of the arms . . . and imprisonment.'" 602 U.S. at 697.

The Court found that "[l]ike the surety and going armed laws, Section 922(g)(8)(C)(i) applies to individuals found to threaten the physical safety of another." 602 U.S. at 698. It found that section 922(g)(8) "restricts gun use to mitigate demonstrated threats of physical violence" just like historical surety and going armed laws. 602 U.S. at 698. These historical laws satisfy *Bruen*'s historical analogue test because section 922(g)(8)(C)(i)'s firearm "provision is 'relevantly similar' to those founding era regimes in both why and how it burdens the Second Amendment right." 602 U.S. at 698.

We will therefore analyze whether K.S.A. 21-6301(a)(18), like section 922(g)(8)(C)(i), applies to individuals found to threaten the physical safety of another. The Kansas Supreme Court has provided direction on how to interpret statutes like K.S.A. 21-6301:

> "The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. In ascertaining this intent, we begin with the plain language of the statute, giving common words their ordinary meaning. When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. But if a statute's language

is ambiguous, we will consult our canons of construction to resolve the ambiguity. [Citations omitted.]" *Johnson v. U.S. Food Service*, 312 Kan. 597, 600-01, 478 P.3d 776 (2021).

Here, K.S.A. 21-6301(a)(18)'s plain language shows an intent to disarm individuals found to threaten the physical safety of another. It aims to prohibit individuals from possessing firearms "who, within the preceding five years, ha[ve] been convicted of a misdemeanor for a domestic violence offense." K.S.A. 21-6301(a)(18). Under K.S.A. 21-6301(m)(1): "'Domestic violence' means the use or attempted use of physical force, or the threatened use of a deadly weapon, committed against a person with whom the offender is involved or has been involved in a dating relationship or is a family or household member." Clearly, K.S.A. 21-6301(a)(18) restricts firearm possession from individuals who have threatened the physical safety of another.

McCray attempts to distinguish, however between a PFA "order [that] requires specific findings related to future dangerousness" and K.S.A. 21-6301(a)(18) which "contains no findings related to future harm." This distinction in practice makes little sense. Disarming individuals who pose a credible threat to the physical safety of such intimate partner or child is arguably more restrictive to an individual's Second Amendment rights than someone who has *already* been convicted as a domestic violence offender. While restricting an individual subject to a PFA order from arming themselves "mitigate[s] demonstrated threats of physical violence," K.S.A. 21-6301(a)(18) works to disarm individuals who have recently engaged in physical violence or attempted it, not just threatened physical violence. See *Rahimi*, 602 U.S. at 698.

It could also be relevant that the Legislature intended to disarm misdemeanor domestic violence offenders whose convictions occurred "within the preceding five years." K.S.A. 21-6301(a)(18). A reasonable conclusion from the statutory language is

15

that the Legislature wants to limit those who have recently engaged in domestic violence from using firearms in future domestic violence incidents, at least for five years.

McCray's contention, therefore, that "[f]irearm restrictions for domestic violence are not rooted in history and tradition" is incorrect. And McCray's concerns with K.S.A. 21-6301(a)(18) as it relates to domestic violence offenders, is addressed through the rationale in *Rahimi*. We therefore find K.S.A. 21-6301(a)(18) is constitutional under the Second Amendment.

III. Did the Prosecutor Commit Reversible Error in Closing Arguments?

A. *Preservation and standard of review*

McCray did not object to the prosecutor's statements during closing argument that he now contends caused reversible error. He admits this on appeal. But he correctly maintains that no contemporaneous objection to claims of prosecutorial error during closing argument need to be lodged for preservation on appeal. *State v. King*, 288 Kan. 333, 344, 204 P.3d 585 (2009).

Prosecutors cannot offend a defendant's right to a fair trial. *State v. Blevins*, 313 Kan. 413, 428, 485 P.3d 1175 (2021). Wide latitude should be given to prosecutors discussing evidence during closing arguments. *State v. Tahah*, 302 Kan. 783, 787, 358 P.3d 819 (2015). Prosecutors fall outside their wide latitude if they misstate the law. *State v. Ross*, 310 Kan. 216, 221, 445 P.3d 726 (2019).

Identifying prosecutorial error involves a two-step test. First, an appellate court determines whether an error occurred. *State v. Crawford*, 300 Kan. 740, 744, 334 P.3d 311 (2014). This prong is met when a prosecutor argues facts not in evidence. An appellate court must then consider whether the misstatement of facts constitutes plain

error. *State v. Hall*, 292 Kan. 841, Syl. ¶ 5, 257 P.3d 272 (2011). But "prosecutorial error is harmless if the State can demonstrate 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record.'" *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016) (quoting *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 [2011]). Here, if error is found, the State bears the burden of showing McCray was not prejudiced.

B. *The prosecutor misstated facts but not the law.*

McCray contends the prosecution erred three times in closing argument when it misstated evidence. He argues the prosecution misstated a fact in its initial closing argument when it said:

"Now, I anticipate in a moment that [defense counsel] is going to get up and tell you that the defendant didn't have any knowledge that he couldn't possess this gun. Well, there's nothing in this instruction that requires that the defendant have knowledge that he couldn't possess the gun. The defendant knew he had the gun, I would submit to you, based on the evidence, that's supported by the evidence. And number two, *he knew he had a misdemeanor conviction. He has stipulated to that. You can consider that proven*." (Emphasis added.)

He also contends the prosecution misstated a fact in its rebuttal closing argument when it said:

"What is required is that he knew he had the gun, which he did. He admits it was his gun, he had it in the house, there's no dispute about that. *And he has to know that he had the misdemeanor conviction. And he does know that. And you know that based on the stipulation.* You also know that based on the statements of the defendant to Officer Chisholm. He tells him: I'm on probation, I'm on paper." (Emphasis added.)

And he alleges the prosecution made a misstatement of law when it expressed:

17

"Whether or not he knew that he couldn't have the gun that night, again, it doesn't matter. And *all this is about is whether or not he knowingly possessed the firearm on December 17th*. I submit to you that the evidence supports that he does—he did, and I'd ask you that find [*sic*] him guilty of criminal use of a weapon." (Emphasis added.)

> 1. *The prosecution committed error when it misstated facts, but it did not commit error in describing the pertinent law.*

McCray does not provide an individual analysis for each of the two purported misstatements of fact. Rather, he makes a general argument that he believes these two statements were misstatements because even though he stipulated he had a prior misdemeanor domestic violence conviction, he "*did not* stipulate to knowledge of that prior conviction or its nature."

McCray argues the prosecution misstated facts because it was false to say the "stipulation meant he knew of his prior conviction on the date of the current offense" and the stipulation does not express McCray knew his prior conviction was for a "'domestic violence offense.'" He is correct. Plainly, the stipulation does not reference McCray's *knowledge* of his conviction on the date of his K.S.A. 21-6301(a)(18) offense. The stipulation simply states he had a misdemeanor conviction of W.M.O. § 5.10.025(a)(1), as defined in K.S.A. 21-6301(m)(1) and that conviction was within the five years preceding December 17, 2022. The prosecution misstated facts.

While the State points to other evidence supporting McCray's knowledge of his conviction, this evidence involved McCray's statements to the officer, not the stipulation mentioned by the prosecutor. Even if it is true other evidence in the record supports the prosecution's alleged misstatements in closing, that does not assist an analysis of whether the prosecution erred. It would only be relevant to determining whether any error was harmless; i.e., whether the misstatement "affect[ed] the outcome of the trial in light of the entire record.'" *Sherman*, 305 Kan. at 109.

18

McCray also argues the prosecution misstated the law when it noted "all this is about is whether or not he knowingly possessed the firearm on December 17th." Under K.S.A. 21-6301(a)(18), the State must prove the defendant knowingly possessed a firearm and the defendant did so while knowingly convicted of a domestic violence offense within the preceding five years. *Beasley*, 64 Kan. App. 2d 203, Syl. ¶ 1. Since the prosecutor's quoted statement only acknowledged knowingly possessing a firearm, McCray believes "the prosecutor's statements effectively took one issue of fact, a necessary element of the crime, away from the jury's role as factfinder."

The State argues context matters here. It points to two prior statements by the prosecution during closing arguments where it told the jury it had to prove the defendant knowingly possessed a firearm and the defendant did so while knowingly convicted of a domestic violence offense within the preceding five years. First, the prosecution stated, "based on the evidence" the "defendant knew he had the gun" "[a]nd number two, he knew he had a misdemeanor conviction." Second, it also stated, right before the alleged misstatement of law: "What is required is that he knew he had the gun, which he did. . . . And he has to know that he had the misdemeanor conviction."

A prosecutor should be permitted to funnel the jury's attention to an element it believes is critical in a case, so long as they do not indicate that is the only element they need to prove. Here, the prosecution did not say the only element it needs to prove is whether McCray knowingly possessed a firearm on December 17. In fact, as the State points out on appeal, the prosecution told the jury at least twice that it had to prove that McCray knowingly possessed a firearm *and* he did so while knowingly convicted of a domestic violence offense within the preceding five years. And one of the prosecution's statements discussing both requisite elements was expressed just before the alleged misstatement of law.

19

This court must "not consider the remark in isolation but instead consider[] the remark in the context of the entire closing argument and the instructions given to the jury." *State v. Burnett*, 293 Kan. 840, Syl. ¶ 7, 851-52, 270 P.3d 1115 (2012) (finding the prosecutor did not misstate the law in closing arguments "in the context of the entire closing argument and in conjunction with the instructions given at trial" so it "need not address the second step of the prosecutorial misconduct analysis"). The context of the entire closing argument shows that the prosecution told the jury it must prove both requisite elements. We therefore do not find the prosecution erred by misstating the law.

### 2. *The prosecution's error was harmless.*

While we find the prosecution committed error in misstating facts, we also find this error was harmless because other evidence demonstrated McCray knew of his municipal conviction, as we explained above. McCray's municipal court documents demonstrate that he knew of his conviction, and his own statements to the officer further establish that he knew he was prohibited from possessing a firearm. The prosecution's statement was correct—there was evidence to support McCray's knowledge of his conviction—it just pointed to the wrong evidence. Given that other evidence supported the prosecutor's statement, we find the error to be harmless.

Affirmed.